E-filing

1  Cunzhu Zheng (Pro Se)
   1710 S. Del Mar Ave.#214
2  San Gabriel CA 91776
   Telephone: (626) 227-4575
3  Facsimile: (626) 280-9799
   E-mail: minzhu98@yahoo.com
4
5  Guo Quan(Pro Se)
   Rm. 503 Unit 3,No 38 Huju Rd.,
6  Nanjing, Jiangsu,P.R.China
   Telephone: 86-13151423196
7  E-mail: duidui6390@sina.com

**FILED**

FEB 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8

9

10              **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12

13

14                                          **C08-01068**

15  ZHENG CUNZHU,   GUO QUAN, and          )  Case No:
16  ADDITIONAL PRESENTLY UNNAMED AND       )
    TO BE IDENTIFIED INDIVIDUALS           )
17                                         )
                                           )
18                                         )
                    Plaintiffs             )
19                                         )  COMPLAINT FOR TORT DAMAGE
                                           )
                    v.                     )
20                                         )
21                                         )  JURY TRIAL DEMANDED
    YAHOO! INC., a Delaware Corporation,   )
22  YAHOO! HONG KONG, LTD., a Foreign      )
    Subsidiary of Yahoo! AND OTHER         )
23  PRESENTLY UNNAMED AND TO BE            )
    IDENTIFIED CORPORATE DEFENDANTS        )
24  AND UNNAMED AND TO BE IDENTIFIED       )
    INDIVIDUAL EMPLOYEES OF SAID           )
25  CORPORATIONS,                          )
                    Defendants.            )
26                                         )
27  _____ )

28

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

**COMPLAINT**

Plaintiffs allege upon personal knowledge and belief as to their own circumstances, and upon information and belief (based on the investigation of themselves) as to all other matters, that substantial evidentiary support exists or will exist after a reasonable opportunity for further investigation and discovery as a result of trial proceedings, in support of the following:

1.    Named Plaintiffs and additional unnamed and to be identified Plaintiffs (hereinafter referred to collectively as "Plaintiffs") have been and are being subjected to grave violations of some of the most universally recognized standards of international law, including prohibitions against torture, cruel, inhuman, or other degrading treatment or punishment, arbitrary arrest and prolonged detention, and forced labor, for exercising their rights of freedom of speech, association, and assembly, at the hands of Defendants through Chinese officials acting under color of law in the People's Republic of China (referred to herein as "the PRC" or "China").

2.    To commit these violations of specific, universal, and obligatory standards of international law, Defendants willingly provided Chinese officials with access to private e-mail records, copies of email messages, e-mail addresses, user ID numbers, and other identifying information about the Plaintiffs and the nature and content of their use of electronic communications. This information, available only to the Defendants, was voluntarily provided to Chinese officials by Defendant Yahoo! Inc. and its agents, alter egos, and/or other affiliated entities, including but not limited to wholly-owned subsidiaries Yahoo! HK and Yahoo! China. In addition, there are positive indicators that various subsidiaries and affiliates of Yahoo! Inc., have also, under the control and supervision of Defendant Yahoo Inc., continued to provide PRC officials with this information for various unnamed and to be identified Plaintiffs after Alibaba.com acquired control over Yahoo! China in October 2005. These disclosures served and are continuing to serve as the basis for the acts of persecution and torture that occurred and are occurring as a direct result of the Defendants' activities. By providing internet user identification information to the PRC, Defendants knowingly and willfully aided and abetted in the commission

1  of torture and other major abuses violating international law that caused Plaintiffs' severe physical

2  and mental pain and suffering.

3      3.  Plaintiffs' claims are actionable under the Alien Tort Statute (ATS), 28 U.S.C. §

4  1350, and the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350, because their injuries

5  resulted from violations of specific, universal, and obligatory standards of international law as

6  embodied in a number of treaty obligations binding on the United States and implemented

7  domestically here in the United States by a number of statutes including the TVPA.

8      4.  Defendants' conduct also violates California state laws, including prohibitions against

9  battery, false imprisonment, assault, intentional infliction of emotional distress, negligence,

10  negligent supervision, and the California Business & Professions Code § 17200.

11      5.  Defendants' conduct also breaches United States law under the Electronic

12  Communications Privacy Act by exceeding their authorization to access and control highly private

13  and potentially damaging information concerning Plaintiffs' electronic communications, in

14  violation of 18 U.S.C. § 2701, by unlawfully and knowingly divulging Plaintiffs' electronic

15  communication contents and user information, in violation of 18 U.S.C. § 2702, and by

16  intentionally acquiring and/or intercepting the contents of electronic communications sent by

17  and/or received by Plaintiffs through their use of computers, routing equipment and other

18  electronic devices which were part of, and utilized in, Defendants' electronic communications

19  systems, in violation of 18 U.S.C. § 2511.

20      6.  Plaintiffs seek general, compensatory, and punitive damages for their injuries, as well

21  as declaratory and injunctive relief to hold Defendants accountable for their unlawful actions, and

22  to secure the Defendants' assistance in obtaining the Plaintiffs' release from prison. Plaintiffs also

23  seek relief that would prevent them from similarly harming others in the future.

24

25                                  **JURISDICTION AND VENUE**

26

27      7.  This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 (federal

28  question jurisdiction), 28 U.S.C. § 1350 (Alien Tort Statute) and 28 U.S.C. § 1350 (Torture Victim

1  Protection Act). The Alien Tort Statute provides federal jurisdiction for "any civil action by an
2  alien for a tort only, committed in violation of the law of nations or a treaty of the United States."
3  The Torture Victim Protection Act supplements and confirms the ATS by providing federal court
4  jurisdiction for acts of torture, as defined by 28 U.S.C. § 1350. The Electronic Communications
5  Privacy Act, 18 U.S.C. § 2701 *et seq*., provides federal jurisdiction for civil claims arising
6  from unauthorized disclosure of electronic communications and customer information.

7  8.  This Court also has supplemental jurisdiction over claims arising from violations of state
8  law because, pursuant to 28 U.S.C. § 1367, the facts in the claims arising from state law are so
9  related to the Plaintiffs' claims under federal laws that they form part of the same case or
10  controversy under Article III of the United States Constitution.

11  ### INTRADISTRICT ASSIGNMENT

12  9.  Assignment and venue in the San Francisco/Oakland Division is proper pursuant to
13  Local Rule 3-2(c) and (d) because Defendant Yahoo! Inc. is located in, does business in, and has
14  major business contacts with this district and division. Other named and unnamed Defendants
15  are similarly subject to the jurisdiction of this court by virtue of their corporate ties and/or
16  business contacts and activities in this jurisdiction.

17  ### PARTIES

18  #### *Plaintiffs*

19  10.  Plaintiff **Zheng Cunzhu** is a subject and citizen of the People's Republic of China and
20  a resident of the California since Jan. 2006. He sues on behalf of himself for the injuries, including
21  spiritual pain and suffering and economical losses he has endured as a result of his fear to return
22  China. This fear is caused by the Defendant's actions aiding and abetting Chinese government
23  officials in committing the major human rights abuses. One well-known case is his colleague, Li
24  Zhi, the same member of China democracy Party was arrested and put into prison and the link
25  between this case and the Defendants was unveiled early 2006.

26  11.  China Democracy Party West American Foundation  (referred to herein as "CDP") is
27  incorporated in California in May 2006 as a non-profit branch of China Democracy Party by Zheng
28  Cunzhu, a student leader in 1989's democratic movement and party member since 2001, to

promote the theory of democracy and multi-party system among Chinese in California and help political dissidents and their families in China. Li Zhi, the member of China Democracy Party will sue on behalf of himself for the injuries, including severe pain and suffering, he has endured as a result of his torture, cruel, inhuman, or other degrading treatment, and arbitrary arrest and prolonged detention inflicted upon him as a result of the Defendants' actions aiding and abetting Chinese government officials in committing these major human rights abuses. Specifically, Li Zhi was arrested and unlawfully and arbitrarily detained and prosecuted for publishing and circulating through the Internet electronic journals and articles that supported democratic reform in China and for communicating with other democracy advocates. He will also sue for compensation for his property seized by government officials in conjunction with his arbitrary arrest and prolonged detention. Li Zhi is serving an eight-year sentence at Sichuan Province No. 3 Prison. He has served four and half years of his eight-year sentence.

12.     Plaintiff **Guo Quan** is a subject, citizen, and resident of the People's Republic of China. He sues on behalf of himself for the injuries of his name being blocked from the search results by the Defendants. Guo Quan has also a garment company using his name as the company name and this company is also blocked from the search results.

13.     Additional Plaintiffs temporarily designated as "**Presently Unnamed and To Be Identified Plaintiffs**" are citizens of China currently living in China or in exile in other countries, such as the United States, who were arbitrarily detained, arrested, tortured, subjected to cruel, inhuman, or degrading treatment or punishment, and/or subjected to forced labor, as a result of Defendants' actions in aiding and abetting these violations of United States and international law, including federal and state laws that provide civil actions for Defendants' acts. At the time of filing, Plaintiffs have identified at least 60 individuals arbitrarily imprisoned in China for expressing their support for free elections, democracy, or human rights through Internet communications or use, whose arrests and detention, based on information currently available through reliable sources including the United States Department of State may be linked to actions by the Defendants that revealed their Internet and electronic communication identifying information to PRC officials. Additional information about their arrests and detention, and their

treatment in detention, for these unnamed individuals, as well as information about how the Defendants may be responsible for their abuse, will be obtained during discovery and described in greater detail during these proceedings. Their inclusion in this lawsuit is critical both in order to identify the extent of the Defendants' role in enabling these abuses, as well as to curb, prevent and remedy current corporate practices of the Defendants that are directly responsible for these abuses. Such Plaintiffs may also include others located outside of China who have been or are currently being adversely affected by the Defendants' practices.

### *Defendants*

14.     Defendant **Yahoo! Inc.** is incorporated in Delaware. Its principal place of business has been located in California since 1994. Its corporate headquarters are in Sunnyvale, California, in Santa Clara County. Yahoo! Inc. operates a business concerned primarily with facilitating the distribution of and access to electronic communication and information. The company's major activities include supplying and operating Internet service, web-based personal e-mail accounts, news portals, and a search engine, all designed to facilitate electronic communication and the sharing of information. By the nature of its activities, Yahoo! has access to and maintains identifying information about individuals using its electronic services.

15.     Yahoo! Inc. is the parent company and ultimate owner of the entire issued share capital of Yahoo! Hong Kong Limited. During the incidents related to the arrest and detention of plaintiff Li Zhi, Yahoo! Inc. exercised significant control over Yahoo! China. It did so via its organizational relationship with Yahoo! Hong Kong Limited (formerly Yahoo! Holdings (Hong Kong) Limited), which was the parent company of Yahoo! China. In addition, Yahoo! Inc. exercised functional control and supervision over important aspects of the operations of Yahoo! China. This included supervision and control of policy and legal decisions made by Yahoo! China's Legal Team, including issues and activities relevant to the subject of this complaint, where the Yahoo! China legal team reported directly to and took direction from the legal team of Yahoo! Inc. Given both Yahoo! Inc.'s ownership and supervision of Yahoo! Hong Kong Limited and their relationship to the legal team of Yahoo! China, Yahoo! Inc. was uniquely positioned to review and approve the specific practices and policies that led to the arbitrary arrest, arbitrary detention and torture of the

1  Li Zhi as outlined in this complaint. Prior to October 2005 and at the time of the allegations made
2  in this petition relating to Li Zhi, there was a unity of ownership and positive indicators of a unity
3  of interest between the personality of Yahoo! Hong Kong Limited (formerly Yahoo! Holdings
4  Hong Kong Limited) and the personality of Yahoo! Inc.

5    16.    Yahoo! Inc. has supervised the business operations of Yahoo! in China under the name
6  Yahoo! China since 1999. Yahoo! Inc. has conducted business in China directly, through its
7  wholly-owned subsidiary Yahoo! HK and since October 2005, primarily through a strategic
8  partnership with Alibaba.com. In addition to directly owning and controlling the operations of
9  Yahoo! Hong Kong (and therefore Yahoo! operations in China) from the period prior to 2002 until
10 the organizational changes that were made in 2005, Yahoo! Inc. has consistently exercised the
11 function of controlling the organizational structures dictating the management and operation of
12 Yahoo! activities in China. For example, it was Yahoo! Inc., and not Yahoo! China itself, that was
13 the contractual party involved in transferring ownership of Yahoo! China to Alibaba.com. For
14 Yahoo! Inc. to have controlled these organizational and structural decisions, they had to be
15 functionally in charge of the decision making process with respect to China operations.

16    17.    Prior to October 2005, operational, management, strategic, and business decisions for
17 Yahoo! China were made under the direction from Yahoo! Inc. or its appointed international
18 operations management team. Even following the change in ownership of Yahoo! China in
19 October 2005, Yahoo! Inc. can still be held responsible for similar ongoing abuses, as it has
20 continued to exercise substantial control and oversight of Yahoo! China, "caus[ing] each member
21 of the China Group to…carry on the China Business in, and only in, the Ordinary Course of
22 Business, in substantially the same manner" as conducted prior to the change in ownership,
23 including the maintenance of "all Governmental Approvals and other Consents necessary for, or
24 otherwise material to, the China Business." (Stock Purchase and Contribution Agreement by and
25 between Yahoo! Inc. and Alibaba.com Corporation, Dated as of August 10, 2005).

26    18.    Matters related to the specific personal information disclosures of Li Zhi, and other
27 unnamed Plaintiffs within that time period were handled locally by the legal team of Yahoo! China
28 which reported directly to the legal team of Yahoo! Inc. This line of authority and accountability

1   indicates that although Yahoo! China was legally owned by Yahoo HK at the time of the

2   disclosures, it was managed and controlled actually and ultimately by Yahoo! Inc. According to

3   testimony provided to Congress by the General Counsel of Yahoo! Inc., the decision to disclose

4   internet user information by Yahoo! China may have been directly reviewed and approved by

5   Yahoo! Inc.

6       19.    Defendant **Yahoo! Hong Kong Ltd.** (formerly known as Yahoo! Holdings (Hong

7   Kong), Ltd.) (Yahoo! HK), is a wholly owned subsidiary of Yahoo! Inc. based in Hong Kong. Prior

8   to a change in ownership and corporate structure on October 24, 2005, and during the incidents in

9   question for the named Plaintiffs, Yahoo! HK was the business entity, partner, alter ego and/or

10  agent of Yahoo! Inc. responsible for operating and managing Yahoo! China, subject to the control

11  and supervision of Defendant Yahoo! Inc. Through its wholly owned subsidiary, Beijing Yahoo!

12  Consulting and Service Company Limited (Beijing Yahoo!), and the Technical Services

13  Agreement that existed between Peking University Founder Group (PUFG) and Beijing Yahoo!,

14  Yahoo! HK controlled and operated Yahoo! China, maintaining the ability throughout the period in

15  question to appoint and replace all members of the board of directors of Beijing Yahoo!. This

16  organizational structure of ownership and control of Yahoo! China operations by Yahoo! HK

17  remained intact until Yahoo! Inc. formed a strategic partnership with Alibaba.com in October

18  2005.

19      20.    Yahoo! Hong Kong's connection to and responsibility for the abuses set out in this

20  complaint during the period when it exercised control over China operations are indicated by the

21  use of the Yahoo! Hong Kong seal on the documents sent to PRC officials providing them with

22  private internet user information, and by various indices of its ownership and control of Yahoo!

23  China operations at the time of the events in question.

24      21.    The additional, presently **Unnamed and To Be Identified Corporate Defendants**

25  listed in the caption heading of this case are presently unnamed and to be identified corporate

26  entities that contributed to or aided and abetted the violations of international law suffered by

27  Plaintiffs as set out in this complaint, either directly or indirectly via their corporate ties.

28  Additional information about these unnamed entities will be obtained during discovery, allowing

the Parties to ascertain the exact nature and extent of the relationships between these unnamed entities and the already identified Defendants. Identifying information about them and the role they played in the abuses will be identified and described in greater detail during the course of these proceedings.

22.    The additional, presently **Unnamed Individual Defendants** listed in the caption heading of this case are presently unnamed and to be identified employees of the Defendant companies, and/or other persons whose individual actions contributed to or aided and abetted the violations of international law suffered by Plaintiffs as set out in this complaint. Identifying information about them and the role they played in the abuses are expected to be identified and described in greater detail during these proceedings.

### STATEMENT OF FACTS
#### *General Facts*

23.    Journalists, human rights advocates, democracy supporters, members of pro-democratic groups and other Internet users in China have been subjected to a pattern of arbitrary criminal prosecution, imprisonment, and torture as a result of their expression of ideas that are perceived to be in opposition to the positions or policies of the government of the PRC on a variety of politically disfavored topics, such as the Tiananmen Square massacre, democratic reform, multi-party system, China Democracy Party, human rights advocacy, opposition to corruption or disagreement with government policies generally. As a result of the expression of their views, these"dissidents" are subjected to arbitrary arrest, criminal prosecution, and persecution in violation of numerous protections for fundamental rights involving the exercise of freedom of expression, association, press and assembly under the Chinese Constitution and international law.

24.    Since the arrival of electronic communications and the Internet in China, official controls have been imposed to monitor and censor electronic communications on a widespread basis, in order to keep track of the access and use of Internet information sources, including expression and communication related to what are considered certain politically sensitive topics, such as democracy support and human rights. As a result, "dissident" journalists, human rights activists, and other Internet users' personal communications and activities are carefully censored and monitored.

25.    Once these "dissidents" are identified and targeted through the Internet monitoring and censorship program, they face a well-documented pattern of systematic arbitrary arrest and prolonged detention, incommunicado detention, extrajudicial killings, torture, cruel, inhuman or degrading treatment and punishment, and forced labor. Sometimes, these abuses lead to death in custody. Despite Chinese laws prohibiting these violations of both domestic law and international human rights standards, authorities carry out these abuses under color of law within a culture of impunity.

26.    In or around the Spring of 2002, Yahoo! Inc. signed an official, voluntary agreement that had the effect of directly involving Yahoo! in the censoring and monitoring of on-line content and communication by its Chinese users. This agreement was in the form of the Internet Society of China's "Public Pledge on Self-Discipline for the Chinese Internet Industry" (referred to herein as"the Public Pledge"). The Internet Society of China is a government-affiliated professional organization, and the Public Pledge is described as being voluntary, not required by government regulation, although pressures to sign the Pledge and to abide by its requirements as a prerequisite for doing business in China are considerable. By signing the Public Pledge, Yahoo! Inc. voluntarily agreed to help monitor and censor electronic communication use involving information that, according to the Internet Society of China, could "jeopardize state security" or "disrupt social stability," and to report any offending on-line expression or communication to PRC authorities.

27.    A number of human rights organizations responded to news of the Defendants signing this pledge by alerting Defendants that by helping the censors, and by identifying people who could be accused of anti-government speech or communication, the Defendants would be placing many innocent individuals, who were merely expressing their views or communicating with others, at risk of arbitrary arrest, prolonged arbitrary detention, forced labor, and torture as a result of their lawful exercise of free speech and free association rights. For example, on July 30, 2002, Human Rights Watch sent a letter to Yahoo! Inc. Chairman and Chief Executive Officer Terry Semel, expressing concern that Yahoo! Inc. signed the Public Pledge, and alerting Yahoo! Inc. of the dangers to Internet users associated with their company's cooperation with monitoring and censoring efforts. This letter notified Yahoo! Inc. that it was common in China for people to be

arbitrarily arrested for expressing disfavored views. The letter pointed out that "In China … any public expression of views that differ from those of the state, and provision of information not deemed politically acceptable, may be considered 'harmful' and may result in a prison sentence," mistreatment, torture, and execution. The letter also stated that, by upholding the Public Pledge, Defendants would risk assisting such human rights violations, clearly pointing out that "there is a strong likelihood that Yahoo will assist in furthering such human rights violations" through support of these monitoring and censorship activities. The letter urged Yahoo! Inc. to withdraw from the Public Pledge and to state its support for internationally recognized standards of free expression. Human Rights Watch also sent copies of this letter to Jerry Yang, Co-Founder and Director of Yahoo! Inc., Chris Castro, Chief Communications Officer and Senior Vice President of Yahoo! Inc., John Costello, Chief Global Marketing Officer of Yahoo! Inc., and Jon Sobel, Vice President, General Counsel, and Secretary of Yahoo! Inc.

28.    A subsequent 2002 Amnesty International report also provided Defendants notice that the Defendants' involvement in the monitoring and censorship program presented a grave risk to Internet users, and subjected them to arbitrary detention and torture. On November 26, 2002, Amnesty International published "State Control of the Internet in China," documenting Chinese officials' use of electronic evidence to prosecute Chinese democracy advocates for exercising their freedom of expression over the Internet. This report, as well as the numerous press releases and news articles publicizing it, noted that Yahoo! Inc. had signed the Public Pledge and pointed out that compliance with the pledge could lead to violations of international human rights norms. Furthermore, the report documented that 21 prisoners in China had already suffered arbitrary arrest and prolonged arbitrary detention, torture, and death in custody as punishment for the "crime" of using the Internet to exercise their right to freedom of expression, and to communicate and obtain information concerning human rights or democracy.

29.    Particularly in light of these notifications, along with general and well-publicized documentation of Chinese human rights abuses, including those in the U.S. Department of State Country Reports on human rights abuses dealing with China, and all other nations' human rights practices, Defendants had every reason to know and understand that the electronic communication

1   user information they provided to authorities could well be used to assist in the infliction of such

2   abuses as arbitrary arrest, torture, cruel, inhuman, or other degrading treatment, and prolonged

3   detention and/or forced labor, to punish what might be viewed by authorities as pro-democracy or

4   human rights activities.

5       30.    Despite this knowledge and understanding, Defendants turned over specific identifying

6   information about the Plaintiffs and their electronic communications to officials who used this

7   information as a basis for arbitrarily arresting, detaining, and torturing the Plaintiffs. There are

8   positive indications that this policy of disclosure continues to the present day, and has affected a

9   large number of the presently unnamed and to be identified Plaintiffs, in addition to the named

10  Plaintiffs.

11      31.    While in custody, Plaintiffs were subjected to torture, cruel, inhuman or degrading

12  treatment, forced labor, and arbitrary, prolonged and indefinite detention, for expressing their free

13  speech rights and for using the Internet to communicate about democracy and human rights

14  matters.

15      32.    Defendants greatly benefited from these violations of the Plaintiffs' fundamental human

16  rights through their continued and expanded conduct of business in the PRC, the second-largest

17  Internet market in the world with at least 210 million users. Defendants provided identifying

18  information about the Plaintiffs, in violation of the privacy agreements and assurances made to the

19  Defendants' customers and users, that led to their arbitrary arrest, indefinite detention and torture,

20  in order to obtain the approval and support of PRC officials and their agreement to allow them to

21  continue conducting and expanding the Defendants' business interests in the PRC.

22                                    ***Specific Facts***

23                              Li Zhi, the member of CDP

24      33.    On Nov.9, 2001,Jan.15, 2003 and June 1,2003, Li Zhi used the internet to apply for

25  membership to "China Democracy Party" and endorsed this party's positions. On June 4,2003, Li

26  Zhi received a certificate of appointment issued by the party, offering him the positions of the

27  "China Democracy Party" second-line organization's national committee member, head of

28

Committee No.103466, and representative to this party's first national representative congress. Li Zhi's primary responsibility was to establish and develop "China Democracy Party" in the PRC.

34. On Aug.11,2003 Li Zhi was arbitrarily detained and arrested on Sept.3,2003 and held at Da County Detention Center.

35. On Dec.10,2003, the Dazhou City Intermediate People's Court of Sichuan Province sentenced Li to eight years in prison.

36. The court specifically relied on evidence supplied by Defendants to identify and convict Li Zhi. The "Certificate of User information " and the Attachments include Li's register information and email contents were supplied by Defendants on Aug.1 2003 to security police. Defendants were cited in the court decision as instrumental in causing the Plaintiff's arrest and criminal prosecution.

37. In Jan 2004 Li Zhi filed his appeal with the Supreme People's Court, citing his arrest and conviction for free expression of his democratic opinions was illegal under Chinese and international law. Rejecting these arguments, the court denied his appeal on Feb. 26,2004.

## Zheng Cunzhu

38. Zheng Cunzhu was a student leader in Anhui province during democratic movement in 1989. and he supported the establishment of China Democracy Party by Wang Youcai in June 1998 by writing articles published on the internet. In 1998 Zheng registered an email address (minzhu98@yahoo.com) from yahoo and use this email to send and receive articles till today. At the end of 2000, Zheng contacted with China Democracy Party by yahoo email and applied apply for membership to "China Democracy Party" and was accepted in Jan 2001. On July 1,2003, Zheng Cunzhu received a certificate of appointment issued by the party, offering him the positions of the "China Democracy Party" second-line organization's national committee member, head of Committee No.103473, and representative to this party's first national representative congress. Zheng Cunzhu's primary responsibility was to establish and develop "China Democracy Party" in the PRC.

39. From 1999 to 2005, Zheng Cunzhu worked as a businessman in PRC and invested two factories and one trading company in Anhui province, PRC. He often traveled to other lands

including USA for business but most of the time was in PRC. During this time, he also kept writing articles advocating democracy and political reform.

40.    In Jan 2006, Zheng Cunzhu moved to USA with his daughter and applied for travel document to prepare travel back to PRC for his factories and business. But in Feb,2006, just after his arriving in USA, the case of LI Zhi, who is the member of the same China Democracy Party was revealed. The verdict of Li was posted in the Internet and the link between Defendants and his arrest was also well known by the public. Zheng Cunzhu fear that he would face the same fate if he return to PRC because he found several similarities from Li Zhi's case: both applied for membership of China Democracy Party, both applications were approved and received same certificates of appointments issued by the party, offering same positions, and both used yahoo email to send and receive messages.

41.    Zheng Cunzhu canceled his plan to go back to China. Because of his long absence caused by the fear of being arrested by security police in PRC with the help of Defendants, he lost the real control of the two factories and his investment and property were under danger of being defrauded by others.

42.    In May 2006, Zheng Cunzhu registered a branch of China Democracy Party named China Democracy Party West American Foundation and began democratic activities to promote democracy and multi-party system in China and help the party dissidents and their families in PRC.

43.    In Nov. 2007, Zheng Cunzhu published an open letter to leaders of PRC calling on the political reform and in Jan.2008 he launched China Democracy Party Local Committee and re-opened the homepage of China Democracy Party West American Foundation with address of http://www.cdpca.org which was hacked in 2007. The new plan to help party member's family is to help the daughter of Qin Yongmin to apply for study in USA. Qin Yongmin is one of the famous founders of China Democracy Party in PRC in 1998 and was sentenced to eleven years in prison.

### Guo Quan

44.    Guo Quan is an associate professor of Nanjing Normal University. He was also a member of China Democratic League, one of the China's political flower vase organizations. Since Nov. 2007, he has published a series of open letters to Chinese leaders calling on political reform

and multi-party political system. He lost his teaching job because of these letters, but he keeps writing articles and published through overseas websites and his personal blog space. After he was expelled from the China Democratic League because of his political opinions, but he was invited to be the acting chairman of the newly established New People's Party on Dec 17,2007.

45.    In Jan 2008, he found that his name and his garment company which is named by his personal name were blocked by yahoo.com.cn and he could not get any information from the search results. When he typed his name in Chinese "Guo Quan" in the yahoo.com.cn, the result is "The keyword you typed may involve in illegal contents." Till today Defendants continue to assist human rights violations through monitoring and censorship activities like blocking Guo Quan's name.

## CAUSES OF ACTION

46.    Plaintiffs' causes of action arise under and violate the following laws, agreements, conventions, resolutions, and treaties:

(a)    Alien Tort Statute, 28 U.S.C. § 1350;

(b)    Torture Victim Protection Act, 28 U.S.C. § 1350;

(c) Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984), *entered into force* June 26, 1987;

(d) International Covenant on Civil and Political Rights, G.A. res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, *entered into force* Mar. 23, 1976;

(e) Universal Declaration of Human Rights (1948) G.A. res. 217A (III), U.N. Doc A/810 at 71;

(f) Charter of the United Nations (1945), **adopted** June 26, 1945, 59 Stat. 1031, T.S. 993, 3 Bevans 1153 (*entered into force* October 24, 1945);

(g) International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor (1930), *adopted* June 28, 1930, 39 U.N.T.S. 55 (*entered into force*

May 1, 1932).

(h) The Electronic Communications Privacy Act, 18 U.S.C. § 2701, § 2702, and §2511; and

(i) Statutes and common law of the State of California, including but not limited to assault and battery, false imprisonment, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and unfair business practices.

### *FIRST CLAIM FOR RELIEF*

**(Torture, a Violation of International Law for Which the Alien Tort Statute and the Torture Victim Protection Act Provide Relief)**

47.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this First Claim for Relief.

48.    The Defendants' acts described in this Complaint caused direct and severe physical and mental pain and suffering to the Plaintiffs and placed them at severe risk of personal injury and/or death in connection with their participation in, and support of, the peaceful exercise of their rights of free speech and communication, free association, and the right to hold, exercise and express their political beliefs.

49.    Because the acts enabled by Defendants as described herein violated multiple provisions prohibiting torture on an absolute basis including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or degrading treatment or punishment, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against torture, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Statute (ATS), 28 U.S.C. § 1350.

50.    These acts also specifically constitute torture in violation of the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350.

51.    Defendants aided and abetted and/or ratified these acts of torture in violation of international, federal, and state law. These violations and actions meet the definition of torture under the meaning of the TVPA, the ATS, and international treaties and U.S. laws and regulations, as well as customary international law, which condemn torture on an absolute basis, irrespective of the reasons why the abuses are inflicted.

52.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

### SECOND CLAIM FOR RELIEF
**(Cruel, Inhuman or Degrading Punishment or Treatment or Punishment, Violations of International Law for Which the Alien Tort Statute Provides Relief)**

53.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Second Claim for Relief.

54.    These acts of cruel, inhuman, or degrading treatment or punishment suffered by the Plaintiffs designated in this Second Claim for Relief, including physical injury and the severe physical and mental suffering associated therewith, were inflicted upon them by the joint and collusive actions of the Defendants and PRC government officials acting under color of law, through unlawful or unauthorized actions prohibited by international law.

55.    These acts had the intent and the effect of grossly humiliating, debasing, intimidating, and punishing the Plaintiffs, forcing them to act against their will and conscience, inciting fear and anguish, and seeking to break their physical and/or moral resistance.

These acts of cruel, inhuman, or degrading treatment or punishment were inflicted on the Plaintiffs for purposes that include, among others, preventing them from exercising their free speech and free association rights, and punishing them for exercising their right to have and communicate political beliefs.

56.  Because the acts described herein violated the prohibitions against cruel, inhuman, or degrading punishment or treatment including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or degrading treatment or punishment, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman or degrading treatment or punishment, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. § 1350.

57.  Defendants knowingly aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of human rights as embodied in international law.

58.  Defendants are liable for aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

59.  The Plaintiffs are therefore entitled on this basis to compensatory and punitive damages in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

### THIRD CLAIM FOR RELIEF
**(Arbitrary Arrest and Prolonged Detention, a Violation of International Law for Which the Alien Tort Statute and the Torture Victim Protection Act Provide Relief)**

60.  Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Third Claim for Relief.

61.  These acts of arbitrary arrest and long-term detention suffered by the Plaintiffs designated in this Third Claim for Relief, including arrest and detention for an unlawful purpose in violation of the rights to freedom of speech, association, and assembly, were inflicted upon them by the joint and collusive actions of the Defendants and government officials acting under color of law, albeit through unlawful or unauthorized actions and for unlawful and unauthorized purposes.

These acts caused direct physical and mental pain and suffering upon the Plaintiffs, caused loss of liberty and property, and placed them at severe risk of personal injury in connection with their participation in, and support of, the peaceful exercise of their rights of free speech and free association, and their rights to hold, exercise and express their political beliefs.

62.  Because the acts described herein violated provisions prohibiting arbitrary arrest and prolonged detention including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged detention, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged detention, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. § 1350.

63.  Defendants aided and abetted in the carrying out of these abuses, and did not act to prevent or punish these violations of human rights as embodied in international and domestic law.

64.  Defendants are liable for aiding and abetting and/or ratifying these abuses, as specified in this cause of action.

65.  The Plaintiffs are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

### *FOURTH CLAIM FOR RELIEF*
#### (Battery)

66.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Fourth Claim for Relief.

67.     On information or belief, Defendants intentionally committed acts that resulted in harmful or offensive treatment of Plaintiffs' persons, and produced bodily harm. Plaintiffs did not consent to the contact and treatment that caused injury, damage, loss or harm to Plaintiffs.

68.     The acts described constitute battery, actionable under the laws of California and the United States.

69.     Defendants are liable for aiding and abetting and/or ratifying these abuses, as specified in this cause of action.

### *FIFTH CLAIM FOR RELIEF*
#### (Assault)

70.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Fifth Claim for Relief.

71.     On information or belief, Defendants' conduct caused Plaintiffs to be subjected to numerous batteries and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendants had a present ability to subject Plaintiffs to immediate, intentional, offensive and harmful touching.

72.     The acts described herein constitute assault, actionable under the laws of California and the United States.

73.     Defendants are liable for aiding and abetting and/or ratifying these abuses, as set forth in this cause of action.

### SIXTH CLAIM FOR RELIEF
### (False Imprisonment)

74.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Sixth Claim for Relief.

75.     On information or belief, Defendants intentionally and unlawfully exercised force or the express or implied threat of force to restrain, detain or confine Plaintiffs on an arbitrary and unlawful basis. The restraint, detention or confinement compelled Plaintiffs to stay or go somewhere against their will for some appreciable time. Plaintiffs did not consent to this restraint, detention or confinement.

76.     Defendants' actions constituted false imprisonment under standards of law applied by California and the United States.

77.     Defendants are liable for aiding and abetting and/or ratifying these abuses as specified in this cause of action.

### SEVENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

78.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Seventh Claim for Relief.

79.     On information or belief, Defendants intended to cause Plaintiffs to suffer emotional distress, or, in the alternative, (a) Defendants engaged in the conduct adversely affecting Plaintiffs with reckless disregard of the high probability that it would cause Plaintiffs to suffer severe abuses and emotional distress, (b) Plaintiffs were present at the time the outrageous conduct and these results occurred and (c) the Defendants knew that Plaintiffs were present and would be adversely affected.

80.     Plaintiffs suffered severe abuse and emotional distress as a result of the conduct of the

1  Defendants.

2  81.    Defendants' conduct constitutes the intentional infliction of emotional distress and is

3  actionable under the laws, standards, and causes of action as set forth in this complaint.

4  82.    Defendants are liable for aiding and abetting and/or ratifying these abuses as set forth

5  in this cause of action.

### EIGHTH CLAIM FOR RELIEF
### (Negligence)

6

7

8  83.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

9  paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Eighth Claim for

10  Relief.

11  84.    On information or belief, Defendants failed to use ordinary or reasonable care in order to

12

13  avoid injury to Plaintiffs. Defendants' negligence was a cause of injury, damage, loss or harm to

14  Plaintiffs.

15  85.    As a result of these acts, Plaintiffs suffered harm including, but not limited to, severe

16  emotional distress. Defendants' conduct constitutes negligence and is actionable under the causes

17  of action as set forth in this complaint.

18

19  86.    Defendants are liable for aiding and abetting and/or ratifying these abuses as specified in

20  this cause of action.

21  ### NINTH CLAIM FOR RELIEF
### (Violation of the California Business & Professional Code §§ 17200 et seq.,
### Unfair Business Practices)

22

23

24  87.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

25  paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Ninth Claim for Relief.

26  88.    Plaintiffs bring this cause of action on behalf of themselves, pursuant to Business and

27  Professions Code § 17204. The Defendants' conduct as alleged herein has been and continues to be

28

deleterious to Plaintiffs, and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of the Code of Civil Procedure § 1021.5.227. Plaintiffs also seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.

89.    The California Business and Professions Code §§ 17200 *et seq.* prohibits "unfair competition," defined as any "unlawful, unfair, or fraudulent business act or practice." These acts or practices consist of those forbidden by law.

90.    The unlawful, unfair, and fraudulent business acts and practices described herein constitute ongoing and continuous unfair business practices within the meaning of Business and Professions Code §§ 17200 *et seq.*, as they are prohibited by state, federal, and international laws including but not limited to: (1) Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.*; (2) Alien Tort Statute, 28 U.S.C. § 1350; (3) Torture Victim Protection Act, 28 U.S.C. § 1350; (4) 18 U.S.C. § 2450 (federal statute criminalizing torture); (5) Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment; (6) International Covenant on Civil and Political Rights; (7) Universal Declaration of Human Rights; (8) Charter of the United Nations; (9) International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor; and (10) Statutes and common law of the State of California, including but not limited to assault and battery, false imprisonment, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendant's acts described herein also violate universal, specific, and obligatory customary international law, which prohibit aiding and abetting, and conspiracy to commit, violations of *jus cogens* human rights norms.

91.    Defendants' practices described herein offend established public policies and involve business practices that are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to customers.

92.    Such practices include, but are not limited to, the unwarranted provision of internet users' private electronic communication information or records in order to be permitted to engage in business in China, with the knowledge that such information would substantively support the torture, battery, threats, and further intimidation of persons who used Defendants' services in China. Members of the public have been in the past and will in the future likely be damaged by these practices.

93.    Defendants have also acted contrary to public policy by infringing upon the freedom of speech and expression of the general public. Members of the public have been in the past and will in the future likely be harmed by these practices.

94.    The conduct as alleged herein constitutes clear violations of customary international law, federal law, and the laws of California.

95.    The furtherance of Defendants' role in the stream of commerce by providing information which results in the aforementioned business practices creates an unfair business advantage over competitors that do not utilize such practices from within California and the United States.

96.    Plaintiffs seek injunctive relief, disgorgement of all profits resulting from these unfair business practices, restitution and other appropriate relief on behalf of themselves and members of the general public as provided in Business and Professions Code § 17203.

### TENTH CLAIM FOR RELIEF
**(Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701, §2702, and §2511, Unlawful Access to Stored Communications)**

97.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein in this Tenth Claim for Relief.

98.    Upon information and belief, Defendants violated the rights of Plaintiffs herein by

intercepting, disclosing, and/or intentionally using electronic communication between Plaintiffs and other persons. The right of a civil action arises under 18 U.S.C. 2707(a), which provides that any person aggrieved by any violation of the Electronic Communications Privacy Act, "in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from any person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

99.    Defendants exceeded their authorization to access and control private information concerning Plaintiffs' electronic communications, in violation of 18 U.S.C. § 2701.

100.    Defendants unlawfully and knowingly divulged Plaintiffs' electronic communication contents and user information, in violation of 18 U.S.C. § 2702.

101.    Defendants intentionally acquired and/or intercepted the contents of electronic communications sent by and/or received by Plaintiffs through the use of an electronic device. Defendants intentionally acquired the communications that had been sent from or directed to Plaintiffs through their use of computers and other electronic devices which were part of, and utilized in, Defendants' electronic communications system, in violation of 18 U.S.C. § 2511 and pursuant to 18 U.S.C. § 2520.

102.    Defendants unlawfully accessed and used, and voluntarily disclosed, the contents of the intercepted communications to enhance their business in China. This disclosure was not

103.    Plaintiffs are "person[s] whose ... electronic communication is intercepted ... or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

104.    Defendants are liable directly and/or vicariously for this cause of action.

105.    Plaintiffs therefore seek remedy as provided for by 18 U.S.C. § 2520, including such preliminary and other equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, and a reasonable attorney's fee and other litigation costs reasonably incurred.

## ABSENCE OF AVAILABLE AND EFFECTIVE REMEDIES IN CHINA

106.     These claims are not precluded by the need or failure to exhaust local remedies as set out in the Torture Victim Protection Act since Plaintiffs have made every effort to seek local remedies in China, and the efforts have proven pointless and futile.

107.     Li Zhi, the CDP member has attempted to utilize domestic remedies, pleading the laws of China, but the Chinese courts have convicted him and rejected his appeal in violation of Chinese and international law and have rejected all other efforts to challenge the actions taken against him. He exhausted all remedies available to him in the Chinese courts when the courts rejected his appeal on Feb. 26 2004.

108.     Any further efforts to obtain relief in China could well result in serious reprisals against those making allegations of wrongdoing on the part of high level officials in the PRC, as well as against the local attorneys representing the complainants. High level officials of the PRC are involved in the abuses alleged in this complaint and in the ratification of these abuses. Taking into consideration that the PRC government used the courts of China to secure Plaintiffs' prolonged arbitrary arrests and detentions, using a highly controlled judicial process to do so, and taking into account the PRC government's refusal and/or inability to properly and effectively investigate acts of torture, cruel, inhuman or degrading treatment or punishment, and arbitrary arrest and prolonged detention and bring the perpetrators to justice, and given further other substantial indicators of governmental acquiescence in the violations of international law and its unwillingness to support legal initiatives that might be undertaken in PRC to obtain relief for Plaintiffs, efforts to secure remedies for them in the PRC, including lawsuits in Chinese courts, must be considered futile. The actions taken by the PRC government to revoke the license of some

criminal defense attorneys and place them under house further indicate the futility of using the Chinese judicial system to secure relief.

109.    For these reasons, requirements for further exhaustion of efforts to obtain local relief should be considered waived and satisfied.

## STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(3)

110.    Due to the unique circumstances of this case, specifically the fact that a substantial amount of the information is unavailable without the Defendants' cooperation, the factual allegations in paragraphs 1, 2, 13, 15, 16, 19, 20, 21, 31, 67, 71, 75, 79, 84 and 98 are made because they "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," pursuant to Rule 11(b)(3). Fed. R. Civ. P. 11(b)(3)

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against Defendants Yahoo! Inc., Yahoo! HK, and Other Presently Unnamed and To Be Identified Corporate Defendants and Presently Unnamed and to be Identified Individual Employees of Said Corporations, as follows:

(a) For actual and compensatory damages to each of the Plaintiffs according to proof to be established at trial;

(b) For punitive and exemplary damages according to proof to be established at trial;

(c) For declaratory relief determining that the actions of the Defendants constituted violations of international law, specifically, that such violations included prohibited acts of torture, cruel, inhuman or degrading treatment, and arbitrary arrest and prolonged detention for the peaceful and exchange of ideas, views, and political beliefs in violation of the Convention Against Torture, numerous other international treaty obligations binding on the United States, and domestic laws and regulations implementing such standards, including the Torture Victim Protection Act, and other enumerated causes of action in this Complaint;

(d) For affirmative action by the Defendants to secure the release of the detainees;

(e) For injunctive relief to stop any further disclosures of user information in order to prevent such aforementioned abuses from taking place in the future;

(f) For costs of the litigation, including, attorneys' fees; and

(g) For such other relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial on all issues triable by jury including, but not limited to, those issues and claims set forth in amended complaint or consolidated action.

Respectfully submitted this 20 th day of Feb. 2008,

Zheng Cunzhu
Secretary
China Democracy Party West American Foundation
1710 S. Del Mar Ave.#214
San Gabriel CA 91776
Telephone: (626) 227-4575
Facsimile: (626) 280-9799
E-mail: minzhu98@yahoo.com

Guo Quan
Rm. 503 Unit 3,No 38 Huju Rd.,
Nanjing, Jiangsu,P.R.China
Telephone: 86-13151423196
E-mail: duidui6390@sina.com