1  PATRICK J. MANSHARDT, State Bar No. 178,085
   SOUTHWESTERN LEGAL FOUNDATION
2  One Bunker Hill Building, Eighth Floor
   601 West Fifth Street
3  Los Angeles, California 90071
   213.688.4045
4  Fax: 213.6884045
   E-mail: PJManshardtlaw@aol.com
5
   Attorney for Plaintiffs CUNZHU ZHENG, QUAN GUO
6  and the CHINA DEMOCRACY PARTY.

7

8

9                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA
10

11 CUNZHU ZHENG; QUAN GUO; the      )   No.   C-08-01068-MMC
   CHINA DEMOCRACY PARTY; and ALL   )
12 SIMILARLY SITUATED INDIVIDUALS,  )   FIRST AMENDED COMPLAINT
                                    )   FOR DAMAGES, INJUNCTIVE
13              Plaintiffs,         )   RELIEF AND ATTORNEY'S FEES
                                    )   PURSUANT TO:
14     vs.                          )
                                    )   Electronic Communications
15 YAHOO, INC., a Delaware          )   Privacy Act, 18 U.S.C. § 2520
   CORPORATION; YAHOO! HONG KONG    )   Alien Tort Statute, 28 U.S.C.
16 a Foreign Subsidiary of YAHOO!, INC )   § 1350;
   Subsidiaries of YAHOO!, INC.; and )   Torture Victims Protection Act of,
17 PEOPLES REPUBLIC OF CHINA,       )   1991, 28 U.S.C. § 1350;
                                    )   U.N. Convention Against Torture,
18              Defendants.         )   G.A. res. 39/46, annex, 39 U.N.
                                    )   Doc. A/39/51 (1984);
19 ─────────────────────────────   )   Cal. Bus. & Prof. Code § 17200.

20                                      JURY TRIAL DEMANDED

21     This is a class action.

22     Plaintiffs hereby allege:

23                    I. JURISDICTION AND VENUE

24     1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §

25 1331, as this action arises under the laws of the United States, *inter alia*, for

26 violations of, or seeks relief under, the Electronic Communications Privacy Act,

27

28                                   1

28 U.S.C. § 2520; the Alien Tort Statute, 28 U.S.C. § 1350; the Torture Victims

Protection Act of 1991, 28 U.S.C. § 1350; the United Nations Convention Against

Torture, G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc.

A/39/51 (1984); and California Business & Professions Code §§ 17200, et seq.

    2.    Venue is proper in the Northern District of California because all

Defendants either reside in the Northern District or are subject to personal

jurisdiction there as provided in 28 U.S.C. § 1391(c).  Further, a substantial part of

the events or omissions set forth in this Complaint occurred in the Northern

District, 28 U.S.C. § 1391(a)(2).

## II. PARTIES

    3.    Plaintiff Cunzhu Zheng is a subject and citizen of the Peoples

Republic of China ("PRC" or "China"), and a resident of California since January

2006.  Zheng was a student leader of the 1989 Tiananmen Square democracy

movement and a survivor of the Tiananmen Square massacre.  Zheng sues on his

own behalf for injuries, specifically, for emotional distress and for economic

losses because of his fear of returning to the PRC as a result of Defendants'

conduct.  Zheng is a member of the China Democracy Party ("CDP"), and is a

class representative for all individuals living in the PRC and the U.S. — who have

suffered major civil rights abuses — because of the disclosure of electronic

communications advocating democracy or human rights in China — including, but

not limited to, arrest, torture, imprisonment, death in custody, economic losses,

and/or fear returning home — because they may suffer similar abuses.

    4.    Plaintiff Quan Guo is a subject, citizen and resident of the PRC.

Quan suffers the indignity of having the Defendants block search results of his

name causing economic loss and emotional distress because prospective customers

to his garment company cannot reach him by the Internet.  Quan sues on behalf of

himself and is a class representative for all similarly situated individuals, living in the PRC or the U.S. — who have suffered major human rights abuses — who have suffered major civil rights abuses — because of the disclosure of electronic communications advocating democracy or human rights in China — including, but not limited to, arrest, torture, imprisonment, death in custody, economic losses and/or fear returning to the PRC — because they may suffer similar abuses.

5.      The CDP is a non-profit organization created both in the PRC and incorporated in California.  Plaintiff Zhi Li is a member of the CDP who was arrested, tortured and imprisoned for publishing and circulating via the Internet electronic journals and articles what supported democratic reform in the PRC and for communicating with other democracy advocates.  Li also had his property seized by PRC officials as a result of his speech-based and associational activities. Li is currently serving the remaining four years of an eight-year sentence at Sichuan Province No. 3 Prison.  Because Li cannot communicate with other CDP members or counsel, Plaintiffs Zheng, Guo and the CDP sue on his behalf.

6.      Plaintiffs Zheng, Guo and the CDP sue as class representatives for all similarly situated individuals who are citizens of the PRC, living in the PRC or in exile abroad — who have suffered physical injuries, emotional distress, detention, arrest, torture, imprisonment, death in custody, seizure of property, and/or fear of returning to the PRC — because of their activities of communicating with each other and circulating messages, journals and articles that support the democracy movement in the PRC over the Internet.

7.      Defendant Yahoo!, Inc., is a Delaware corporation with its corporate offices in Sunnyvale, California, located in Santa Clara County, which is within the Northern District.  Yahoo!, Inc.'s major business activities are primarily supplying and operating Internet services, web-bases personal e-mail accounts,

new portals, and a search engine, all designed to facilitate electronic

communications and the sharing of information.  By the nature of its activities,

Yahoo!, Inc. has access to, and maintains, identifying information about

individuals using its electronic services.

8.     Yahoo!, Inc. is the parent company and ultimate owner of the entire

issued share capital of Yahoo!, Hong Kong, Ltd. ("Yahoo! HK").  During the

incidents related to the arrest and detention of Li, Yahoo!, Inc. exercised

significant control over Yahoo! China, It did so via its organizational relationship

with Yahoo!, HK (formerly Yahoo! Holdings Hong Kong, Ltd), which was the

parent company of Yahoo! China.  Further, Yahoo!, Inc. exercised functional

control and supervision over important aspects of the operations of Yahoo! China.

This includes supervision and control of policy and legal decisions made by

Yahoo! China's legal team, including issues and activities relevant to the subject

matter of this Complaint, where counsel for Yahoo! China reported to, and took

direction from, counsel for Yahoo!, Inc.  Given both Yahoo!, Inc.'s ownership and

supervision of Yahoo! HK, and their relationship to the legal team of Yahoo!

China, Yahoo!, Inc., was uniquely positioned to review and approve the specific

practices and policies that led to the arrest, detention, torture and imprisonment of

Li.  Prior to October, 2005 and at all time relevant to this Complaint as to Li, there

was a unity of interests between Yahoo!, Inc., Yahoo! HK, and Yahoo! China.

9.     Yahoo!, Inc. has supervised the business operations of Yahoo! China

under the same name since 1999.  Yahoo!, Inc. has conducted business in the PRC

directly and through its wholly owned subsidiary Yahoo HK, since October, 2005,

primarily through a strategic relationship with Alibaba.com  In addition to directly

controlling the operations of Yahoo! HK (and therefore Yahoo! China)'s

operations in the PRC, from the period prior to 2002 until the organizational

changes that were made in 2005, Yahoo!, Inc., has consistently exercised the
function of controlling the organizational structures dictating the management and
operation of the Yahoo! Defendants' activities in the PRC.  For example, it was
Yahoo, Inc., and not Yahoo! China itself, that was the contracting party involved
in transferring ownership of Yahoo! China to Alibaba.com.  For Yahoo!, Inc. to
have controlled these organizational and structural decisions, they had to be
functionally in charge of the decision making process with respect to China
operations.

10.    Prior to October 2005, operational, management, strategic and
business decisions for Yahoo! China were made under the direction from Yahoo!,
Inc., or its appointed international operations management team.  Even following
the change in ownership of Yahoo! China in October 2005, Yahoo!, Inc. is still
responsible for ongoing abuses, as it has continued to exercise ongoing substantial
control and oversight of Yahoo! China "causing each member of the China group
to . . . carry on the China business in, and only in, he ordinary course of business,
in substantially the same manner" as conducted prior to the change in ownership,
including the maintenance of "all government approvals and other consents
necessary for, or otherwise to the China business."  (Stock Purchase and
Contribution Agreement by and between Yahoo!, Inc. and Alibaba.com
Corporation, dated August 10, 2005).

11.    Matters related to the specific personal information disclosures of Li
and other similarly situated persons at all times relevant to this Complaint were
handled locally by the legal team of Yahoo! China which reported directly to the
legal team of Yahoo, Inc.  This line of authority and accountability demonstrates
that although Yahoo! China was legally owned by Yahoo HK at the time of said
disclosures, it was managed and controlled by Yahoo!, Inc.  According to

testimony provided to the U.S. Congress by the General Counsel of Yahoo!, Inc., the decision to disclose Internet user information by Yahoo! China, was (upon information and belief), directly reviewed and approved by Yahoo!, Inc.

12.    Defendant Yahoo! HK, is a wholly-owned subsidiary of Yahoo!, Inc., based in Hong Kong.  Prior to a change in ownership and corporate structure in October, 2005, and during the incidents relevant to the allegations in this Complaint, Yahoo HK was the business entity, partner and alter ego, and/or agent of Yahoo!, Inc., responsible for operating and managing Yahoo! China, through its wholly-owned subsidiary Beijing Yahoo! Consulting and Service Company Ltd. ("Beijing Yahoo!") and the technical services agreement that existed between Peking University Founding Group and Beijing Yahoo!.  This organizational structure of ownership and control of Yahoo! China by Yahoo! HK was continued until Yahoo!, Inc. formed a strategic partnership with Alibaba.com in October, 2005.

13.    Yahoo! HK's connection to, and responsibility for, the abuses set forth in this Complaint during the period when it exercised control over China operations are further supported by the use of the Yahoo! HK's seal on the documents sent to PRC officials providing them with private Internet user information, and by various indices of its ownership and control of Yahoo! China operations at all time relevant to the allegations in this Complaint.

14.    The Peoples Republic of China is a sovereign state located on the Asian Continent.  The PRC is a permanent member of the United Nations Security Council.  The PRC is an authoritarian state that is tightly controlled by the Chinese Communist Party.  Despite being a signer of the U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, which was entered into force with respect to the PRC on March 23, 1976, it is almost

universally understood that the Government of the PRC is responsible for numerous major human rights abuses. The PRC is engaged in numerous commercial activities in the Northern District and is specifically engaged in commercial activity with respect to Yahoo!, Inc., Yahoo! HK and Yahoo! China, including, at the very minimum, charging license fees to the various Yahoo! entities for the right to be Internet service providers and conduct other activities in the PRC. Because of the PRC's commercial activities in relation to the Yahoo! entities, the PRC is not subject to sovereign immunity as provided by 28 U.S.C. § 1605(a)(2).

### III. COMMON ALLEGATIONS

15.    Journalists, human rights advocates, supporters of democracy, members of pro-democracy groups, and other Internet users in China have been subjected to a pattern of criminal prosecution, imprisonment, and torture as a result of their expression of ideas that are perceived to be in opposition to the positions and policies of he government of the PRC and the Communist Party on numerous political topics, *inter alia*, the Tiananmen Square massacre, democratic reform in China, multiparty free elections, observation of human rights, opposition to corruption, or disagreement with government policies in general. As a result of their expression of their views, these dissidents are subjected to arrest, criminal prosecution, and persecution in violation of numerous protections for fundamental and political and human rights, including the right to freedom of speech, association, press and assembly under the Chinese Constitution, the United States Constitution and International Law. Reporters Without Borders reports that there are at least 48 cyberdissidents behind bars in China.[1]

---

[1]*In China, a Battle Over Web Censorship*, USA TODAY, April 23, 2008 at A1.

16.    Since the arrival of electronic communications and the Internet in China, official controls have been imposed to monitor and censor electronic communications on a widespread basis.  As a result, dissident journalists, human rights activists, and other Internet users' personal communications and activities are carefully monitored and censored.

17.    Once these dissidents are identified and targeted through the Internet monitoring and censorship program, they face a well-documented pattern of arrest and prolonged detention, extrajudicial killings, torture, cruel, inhuman, degrading treatment and punishment and forced labor.  Sometimes, these abuses led to death in custody.  Despite Chinese laws prohibiting these violations of both domestic law and international human rights standards, PRC authorities carry out these abuses under color of law within a culture of corruption and impunity.

18.    In or around the Spring of 2002, Yahoo!, Inc. signed an official voluntary agreement that had the effect of directly involving the Yahoo! entities in the censoring and monitoring of on-line content and communications by its Chinese users.  This agreement is in the form of the Internet Society of China's Orwellian-named "Public Pledge on Self-Discipline for the Chinese Internet Industry" ("Public Pledge").  The Internet Society of China is a government-affiliated professional organization, and the Public Pledge is described as being voluntary, not required by government, regulation, although pressures to sign the Pledge and to abide by its requirements as a prerequisite for doing business in China are considerable.  By signing the Public Pledge, Yahoo!, Inc. has agreed to help monitor and censor electronic communication use ostensibly involving information that, according to the Internet Society of China, could "jeopardize state security" or "disrupt social stability" and report any offending on-line expression or communication to PRC authorities.  USA Today has reported that

Yahoo! has turned over e-mail transmissions that PRC authorities used to jail a Chinese journalist "who leaked information about China's attempts to censor coverage of the Tiananmen crackdown."[2]

19.    A number of human rights organizations responded to the news of the Yahoo! Defendants signing the Pledge, that by helping the censors, and by identifying people who could be accused of anti-government speech or communications, the Yahoo! Defendants would be placing many innocent individuals, who were merely expressing their views or communicating with others, at risk of arrest, prolonged detention, forced labor, and torture as a result of their nominally lawful exercise of their rights to free speech and association.  As an example, on July 20, 2002, Human Rights Watch sent a letter to Yahoo!, Inc. Chairman and CEO Terry Semel, expressing concern that Yahoo!, Inc. signed the Public Pledge, and alerting Yahoo!, Inc. that it was common in China for people to be arrested for expressing disfavored views.  The letter pointed out that "In China . . . any public expression of views that differ from those of the State, and provision of information not deemed politically acceptable, may be considered 'harmful' and may result in a prison sentence," mistreatment, torture, and execution.  The letter also stated that, by upholding the Public Pledge, Defendants would risk assisting such human rights violations, clearly pointing out that "there is a strong likelihood that Yahoo! will assist in furthering such human rights violations" through support of these monitoring and censorship activities.  The letter urged Yahoo!, Inc. to withdraw from the Public Pledge and to state its support for internationally recognized standards of free expression.  Human Rights Watch also sent this letter to Jerry Yang, co-founder and Director of Yahoo!, Inc., Chris Castro, Chief

---

[2]*In China, a Battle Over Web Censorship*, USA TODAY, April 23, 2008 at A2.

Communications Officer and Senior Vice President of Yahoo, Inc., and John Sobel, Vice President, General Counsel, and Secretary of Yahoo!, Inc.

20.   A subsequent 2002 Amnesty International report also provided the Yahoo! Defendants with notice that their involvement in the monitoring and censorship program presented a grave risk to Internet users, and subject them to detention and torture.  On November 26, 2002, Amnesty International published "State Control of the Internet in China," documenting Chinese officials' use of electronic evidence to prosecute Chinese democracy advocates for exercising the right to freedom of expression over the Internet.  This report, as well as numerous press releases and news articles publicizing it, noted that Yahoo!, Inc. had signed the Public Pledge and pointed out that compliance with the Pledge could lead to violations of international human rights norms.  Furthermore, the report documented that 21 prisoners in China had already suffered arrest and prolonged detention, torture and death in custody as punishment for the "crime" of using the Internet to exercise the right to freedom of expression, and to communicate and obtain information concerning human rights or democracy in the PRC.

21.   Particularly in light of these warning, along with general and well-publicized documentation of human rights abuses in the PRC, including those that the U.S. Department of State Country Reports on human rights abuses dealing with China, and all other nations' human rights practices, the Yahoo! Defendants had every reason to know and understand that the electronic communication user information they provided to authorities could well be used to assist in the infliction of such abuses as arrest, torture, cruel, inhuman or other degrading treatment, and prolonged detention and/or forced labor, to punish what would be used by authorities as pro-democracy or human rights activities.

22.   Despite this knowledge and understanding, the Yahoo! Defendants

turned over specific identifying information about the Plaintiffs and their electronic communications to the PRC officials who used this information as a basis for arresting, detaining and torturing the Plaintiffs. There are positive indications that this policy of disclosure continues to the present, and has affected a large number of those persons similarly situated ("class members"), in addition to the named Plaintiffs.

23. While in custody, class members were subjected to torture, cruel, inhuman, or degrading treatment, forced labor, and prolonged and indefinite detention, for expressing the right to free speech and for using the Internet to communicate about democracy and human rights issues.

24. Defendants greatly benefitted from these violations of the Plaintiffs' fundamental human rights through their continued and expanded business in the PRC, the second-largest market in the world with at least 210 million users. Defendants provided identifying information about the Plaintiffs and class members in violation of the privacy agreements and assurances made to the Defendants' customers and users, that led to many of them being arrested, detained and tortured, in order to obtain the approval and support of PRC officials and their agreement to allow them to continue conducting and expanding the Yahoo! Defendants' business interests in the PRC.

25. On November 9, 2001, January 15, 2003 and June 1, 2003, Zhi Li used the Internet to apply for membership to the China Democracy Party and endorsed its positions. On June 4, 2003, Li received a certificate of appointment issued by the CDP, offering him the position of the CDP's second-line organization's national committee member, head of Committee No. 103466, and representative to the CDP's first national representative congress. Li's primary responsibility was to establish the CDP in the PRC.

1    26.    On August 11, 2003 Li was detained and arrested on September 3,

2    2003 and held at Da County Detention Center.

3    27.    On December 3, 2003, the Dazhou City Intermediate People's Court

4    of Sichuan Province sentenced Li to eight years in prison.

5    28.    The court specifically relied on evidence supplied by the Yahoo!

6    Defendants to identify and convict Li.  The "Certificate of User Information" and

7    the Attachments include Li's register information and e-mail contents were

8    supplied by the Yahoo! Defendants on August 1, 2003 to PRC security police.

9    The Yahoo! Defendants were cited in the court decision as instrumental in causing

10    Li's arrest and prosecution.

11    29.    In January 2004, Li filed an appeal with the Supreme People's Court,

12    citing that his arrest and conviction for free expression were illegal under Chinese

13    and International law.  Rejecting these arguments, the court denied his appeal on

14    February 26, 2004.

15    30.    Cunzhu Zheng was a student leader in the Anhui Province during the

16    1989 democracy movement in China and was a supporter of the establishment of

17    the CDP by Youcai Wang in June 1998 by writing articles which he published on

18    the Internet.  In 1998, Zheng registered an e-mail address (minzhu98@yahoo.com)

19    from Yahoo and used his e-mail to send and receive articles.  At the end of 2000,

20    Zheng contacted the CDP by his Yahoo e-mail address and applied for

21    membership and was accepted in January 2001.  On July 1, 2003, Zheng received

22    a certificate of appointment issued by the party, offering him the position of the

23    CDP second-line organization's national committee member, head of committee

24    No. 103473, and representative to the CDP's first national representative congress.

25    Zheng's primary responsibility was to establish and develop the CDP in the PRC.

26    31.    From 1999 to 2005, Zheng worked as a businessman in the PRC and

27

28                                                              12

invested in two factories and one trading company in the Anhui Province. He traveled often to other lands, including the U.S. for business, but spent most of his time in the PRC. During this time he also continued to write articles advocating democracy and political reform.

32.    In January 2006, Zheng moved to the U.S. with his daughter and applied for travel documents to return to his businesses in the PRC. But in February 2006, just after he arrived in the U.S., he became aware of the case of Li, who was also a member of the CDP. Li's verdict was posted on the Internet and the link between the Yahoo! Defendants and Li's conviction were well known. Zheng began to fear returning to the PRC because of similarities between his case and Li's. Both applied to membership in the CDP, both were offered the same position, and both used Yahoo! to send and receive messages.

33.    Zheng cancelled his plans to return to the PRC. His long absence from home, caused by his fear of being arrested by security police in the PRC caused him to lose control of his factories and investments.

34.    In May, 2006, Zheng registered a branch of the CDP in California to continue his activities of promoting democracy and multi-party elections in the PRC and to aid the families of dissidents.

35.    In November 2007, Zheng published an open letter to the leaders of the PRC calling for political reform and re-opened the home page of the CDP in California with the address of www.cdpca.org. The homepage was hacked in 2007. The California CDP's new mission is to assist the daughter of Qin Yongmin, a founder of the CDP, to apply to study in the U.S. Qin Yongmin was sentenced to 11 years in prison in 1998.

36.    Guo Quan is an associate professor of Nanjing Normal University. He was also a member of the China Democratic League, one of the PRC's window

dressing organizations.  Since November 2007, he has published a series of open letters to Chinese leaders calling on political reform and a multi-party political system.  He lost his teaching job because of these letters, but he keeps writing articles and publishes through overseas websites and his personal blog space. After he was expelled from the China Democratic League because of his political opinions, but he was invited to be the acting chairman of the newly established New People's Party on December 17, 2007.

37.    In January 2008, Guo found that his name and his garment company that uses his name were blocked by Yahoo.com.cn and he could not get any information from the search results.  When he typed his name in Chinese "Quan Guo" into yahoo.com.cn, the result showed: "The keyword you typed may contain illegal contents."  To this day, Defendants continue to assist and commit human rights violations through monitoring and censorship activities like blocking Guo's name.

### IV.  ABSENCE OF AVAILABLE AND EFFECTIVE REMEDIES IN CHINA

38.    Plaintiffs' claims set forth in the Complaint are not precluded by the need or failure to exhaust local remedies as set forth in the Torture Victims Protection Act since Plaintiffs have made every effort to seek local remedies in China, and the efforts have proven pointless an futile.

39.    Zhi Li has attempted to utilize domestic remedies, pleading the laws of China, but the Chinese courts have convicted him and rejected his appeal in violation of Chinese and international law and have rejected all other efforts to challenge the actions taken against him.  He exhausted all remedies available to him in the Chinese courts that ultimately rejected his appeal on February 26, 2004.

40.    Any further efforts to obtain relief in China could well result in serious reprisals against those making allegations of wrongdoing on the part of

high level officials in the PRC, as well as against the local attorneys representing the complainants.  High level officials of the PRC are involved in the abuses alleged in this Complaint and in ratification of those abuses.  Taking into consideration that the government of the PRC used the Chinese courts to secure Li's arrest and imprisonment, using a highly controlled judicial process to do so — and taking into account the PRC government's refusal and/or inability to properly and effectively investigate acts of torture, cruel, inhuman or degrading treatment or punishment — and bring the perpetrators to justice, and given substantial indicators of governmental acquiescence in the violations of international law, any further efforts to obtain relief for Plaintiffs using the Chinese courts must be considered futile.  The actions taken by the PRC to revoke the license of some criminal defense attorneys and place them under house arrest further indicates the futility of using the Chinese judicial system to secure relief.

41.  For these reasons, requirements for further exhaustion of efforts to obtain local relief should be considered satisfied and/or waived.

FIRST CAUSE OF ACTION

(Electronic Communications Privacy Act, 18 U.S.C. § 2520)

(Against Defendants Yahoo!, Inc. and Yahoo! HK)

42.  The allegations set forth above in Paragraphs 1 through 41, inclusive, are incorporated into this cause of action by reference as if set forth in full.

43.  By doing the thing alleged in this Complaint, Defendants Yahoo!, Inc. and Yahoo! HK intentionally disclosed Plaintiffs' private communications to Defendant PRC in violation of the Electronic Communications Privacy Act giving rise to a claim for relief under 18 U.S.C. § 2520.

44.  Defendants Yahoo!, Inc. and Yahoo! HK violated the rights of Plaintiffs by disclosing electronic communications between Plaintiffs and other

15

1  persons.  The right of a civil action under 18 U.S.C. § 2707(a), which provides

2  that any person aggrieved by any violation of the Electronic Communications

3  Privacy Act, "in which the conduct constituting the violation is engaged in with a

4  knowing or intentional state of mind may, in a civil action, recover from any

5  person or entity, other than the United States, which engaged in the violation such

6  relief as may be appropriate."

7        45.    Defendants Yahoo!, Inc., and Yahoo!, HK exceeded their

8  authorization to access and control private information concerning Plaintiffs'

9  electronic communications, in violation of 18 U.S.C. § 2701.

10       46.    Defendants Yahoo!, Inc. and Yahoo! HK unlawfully and knowingly

11 divulged Plaintiffs' electronic communication contents and user information, in

12 violation of 18 U.S.C. § 2702.

13       47.    Defendants intentionally acquired and/or intercepted the contents of

14 communications sent and/or received by Plaintiffs through the use of an electronic

15 device.  Defendants Yahoo!, Inc. and Yahoo! HK intentionally acquired the

16 communications that had been sent from, or  directed to, Plaintiffs through their

17 use of computers and other electronic devices which were part of, and utilized in,

18 the Yahoo! Defendants' electronic communications system, in violation of 18

19 U.S.C. § 2511.

20       48.    The Yahoo! Defendants are directly and/or vicariously liable under

21 this cause of action.

22       49.    As a direct and proximate result of Defendant Yahoo!, Inc. and

23 Yahoo! HK's conduct, Plaintiffs suffered serious economic damages.  Plaintiffs

24 also suffered serious injuries, including torture, detention, imprisonment,

25 degrading and/or humiliating treatment and emotional distress.  The full extent of

26 Plaintiffs' damages is not known at this time.  Plaintiffs will amend this Complaint

27

28                                      16

to set forth the full nature of such damages once they have been ascertained with particularity.

50.     Because Defendants Yahoo!, Inc. and Yahoo HK's conduct in disclosing Plaintiffs' private communications which they knew, or should have known, would cause Plaintiffs to be subject to detention, arrest, torture, imprisonment and cruel and degrading treatment — because of their exercise of free speech and political rights, recognized by U.S. and international law — Defendants  acted with reckless disregard of Plaintiffs' rights under the statute and Plaintiffs are entitled to an award of punitive damages against them as provided in 28 U.S.C. § 2520(b)(2).

51.     An actual controversy now exists between Plaintiffs and Defendants Yahoo!, Inc. and Yahoo! HK as to whether Defendants violated Plaintiffs rights in disclosing Plaintiffs' private communications to PRC officials.  Unless the Court issues a declaration of rights, there will continue to be a controversy as to whether Internet Service Providers can disclose private communications to officials of foreign governments.  In addition, numerous future claims of a similar nature are likely to arise and require judicial resolution.  By issuing a declaration of rights at this time, the Court will conserve judicial resources and provide guidance to the parties, and others who are similarly situated as to the legality of Defendants Yahoo!, Inc., and Yahoo! HK's actions in disclosing private communications to PRC officials.

52.     Plaintiffs are further entitled to injunctive relief against Defendants Yahoo!, Inc. and Yahoo! HK to restrain them from disclosing Plaintiffs' private communications to PRC officials as set forth in 18 U.S.C. § 2520(b)(1).

## SECOND CAUSE OF ACTION

(Alien Tort Statute, 28 U.S.C. § 1350)

17

(Against Defendant Peoples Republic of China)

53.    The allegations set forth above in Paragraphs 43 through 52, inclusive, are incorporated into this cause of action by reference as if set forth in full.

54.    By doing the things set forth in this Complaint, Defendant PRC committed torts against Plaintiffs — including but not limited to, detention, arrest, torture, imprisonment, cruel, inhuman and degrading treatment, intentional and negligent infliction of emotional distress — committed in violation of the laws of nations, or a treaty of the United States, including, but not limited to the United Nations Convention Against Torture, G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984).

55.    As a direct and proximate result of Defendant PRC's conduct, Plaintiffs suffered serious economic damages.  Plaintiffs also suffered serious physical and emotional injuries, including torture, detention, imprisonment, degrading and/or humiliating treatment and emotional distress.  The full extent of Plaintiffs' damages is not known at this time.  Plaintiffs will amend this Complaint to set forth the full nature of such damages once they have been ascertained with particularity.

### THIRD CAUSE OF ACTION

(Torture Victims' Protection Act of 1991, 28 U.S.C. § 1350)

(Against Defendant Peoples Republic of China)

56.    The allegations set forth above in Paragraphs 54 and 55, inclusive, are incorporated into this cause of action by reference as if set forth in full.

57.    The acts of arrest, detention and torture suffered by the Plaintiffs including the arrest and detention for the purpose of violating the rights to free speech, association, assembly and petition were inflicted by the joint and collusive

18

action of the Yahoo! Defendants and PRC officials acting under color of law, albeit for unlawful purposes.  These acts caused direct physical and mental pain and suffering upon Plaintiffs, caused loss of liberty and property, and placed them at severe risk of personal injury in connection with their participation in, and support of, the peaceful exercise of the right to free speech and free association, and the right to hold, exercise and express political beliefs.

58.    As a direct and proximate result of Defendant PRC's conduct, Plaintiffs suffered serious economic damages.  Plaintiffs also suffered serious physical and emotional injuries, including torture, detention, imprisonment, degrading and/or humiliating treatment and emotional distress.  The full extent of Plaintiffs' damages is not known at this time.  Plaintiffs will amend this Complaint to set forth the full nature of such damages once they have been ascertained with particularity.  Plaintiffs are also entitled to an award of punitive damages against Defendant PRC.

## FOURTH CAUSE OF ACTION

(California Business & Professions Code §§ 17200, et seq.)

(Against all Defendants)

59.    The allegations set forth above in Paragraphs 57 and 58, inclusive, are incorporated into this cause of action by reference as if set forth in full.

60.    Plaintiffs bring this cause of action on behalf of themselves, pursuant to Business & Professions Code §17204.  The Defendants' conduct as alleged herein has been and continues to be deleterious to Plaintiffs, and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.  Plaintiffs also seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.

61.    California Business & Professions Code §§ 17200 et seq. prohibits "unfair competition," defined as any "unlawful, unfair, or fraudulent business act or practice."  These acts or practices consists of those forbidden by law.

62.    The unlawful, unfair, and fraudulent practices described herein constitute ongoing and continuous unfair business practices within the meaning of Business & Professions Code §§ 17200, et seq., as they are prohibited by federal and international laws, including, but not limited to, the Electronic Communications Privacy Act, 28 U.S.C. § 2520; the Alien Tort Statute, 28 U.S.C. § 1350; the Torture Victims Protection Act of 1991, 28 U.S.C. § 1350; the United Nations Convention Against Torture, G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984).  Defendants' acts described herein also violate universal, specific, and obligatory customary international law, which prohibit the aiding and abetting, and conspiracy to commit, violations of *jus cogens* human rights norms.

63.    Defendants' practices described herein offend established public policies and involve business practices that are immoral, unethical, oppressive, unscrupulous and/or substantial injurious to customers.

64.    Such practices include, but are not limited to, the unwarranted provision of Internet users' private electronic communication information or records in order to be permitted to engage in business in China, with the knowledge that such information would substantively support the torture, threats and further intimidation of persons who used Defendants' services in China. Members of the public have been in the past and will in the future likely be damages by these practices.

65.    Defendants have also acted contrary to public policy by infringing upon the freedom of speech and expression of the general public and the support

for democracy and human rights in China. Members of the public have been in the past and will in the future likely be harmed by these practices.

66.    The conduct as alleged herein constitutes clear violations of customary international law, federal law, and the laws of California.

67.    The furtherance of Defendants' role in the stream of commerce by providing information which results in the aforementioned business practices creates an unfair business advantage over competitors that do not utilize such practices from within California and the United States.

68.    Plaintiffs seek injunctive relief, disgorgement of all profits resulting from these unfair business practices, restitution and other appropriate relief on behalf of themselves and the general public as provided in Business & Professions Code § 17203.

WHEREFORE, Plaintiffs request the following relief:

As to the First Cause of Action:

1.    A declaration that the Yahoo! Defendants violated Plaintiffs' rights under the Telecommunications Privacy Act by disclosing the contents of Plaintiffs' electronic communications to officials of the PRC.

2.    An order enjoining the Yahoo! Defendants from continuing to disclose Plaintiffs' electronic communications to PRC officials.

3.    An award of damages for economic losses, physical injuries and emotional distress.

4.    An award of punitive damages as provided by 18 U.S.C. § 2520(b)(2).

5.    An award of attorneys' fees and costs as provided by 18 U.S.C. § 2520(b)(3).

As to the Second Cause of Action:

1 1.    An award of damages for economic losses, physical injuries and
2 emotional distress.

3 2.    An award of punitive damages.

4 As to the Third Cause of Action:

5 1.    An award of damages for economic losses, physical injuries and
6 emotional distress.

7 2.    An award of punitive damages.

8 As to the Fourth Cause of Action:

9 1.    A declaration that the Yahoo! Defendants violated Plaintiffs' rights
10 under the Telecommunications Privacy Act by disclosing the contents of
11 Plaintiffs' electronic communications to officials of the PRC.

12 2.    An order enjoining the Yahoo! Defendants from continuing to
13 disclose Plaintiffs' electronic communications to PRC officials.

14 3.    An award of damages for economic losses, physical injuries and
15 emotional distress.

16 4.    An order for disgorgement of all profits resulting from the unfair
17 business practices alleged herein.

18 As to all Causes of Action:

19 1.    An award of costs, including attorney's fees under California Code of
20 Civil Procedure § 1021.5, and other relevant provisions of law; and

21 2.    Such other and further relief as the Court finds just and proper.

22 DATED: June 16, 2008          PATRICK J. MANSHARDT

23

24

25 By_____
26                    Patrick J. Manshardt
   Attorney for Plaintiffs CUNZHU ZHENG, QUAN
   GUO, and the CHINA DEMOCRACY PARTY.
27

28                              22

1

2                          **DEMAND FOR JURY TRIAL**

3              Plaintiffs hereby demand a jury trial on all claims so properly triable.

4

5
                             By_____
6                                Patrick J. Manshardt
                             Attorney for Plaintiffs CUNZHU ZHENG, QUAN
7                            GUO, and the CHINA DEMOCRACY PARTY.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      23