LAW OFFICE OF THOMAS K. BOURKE

Thomas K. Bourke, State Bar No. 56333

*Talltom2@aol.com*

Rizwan R. Ramji, State Bar No. 210576

*rramji@aol.com*

One Bunker Hill, Eighth Floor

601 West Fifth Street

Los Angeles, CA  90071-2094

Tel: (213) 623-1092 / Fax: (213) 623-5325

Attorneys for Plaintiffs Cunzhu Zheng, *et al.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUNZHU ZHENG; *et al.*, <br><br>                    Plaintiff, <br><br>      vs. <br><br> YAHOO!, INC., *et al.*, <br><br>                    Defendants. <br> _____ | No.  CV-08-01068 MMC <br><br> **PLAINTIFFS' OPPOSITION TO THE YAHOO! DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)** <br><br> Date:  Nov. 20, 2009 <br> Time: 1:30 p.m. <br> Ctrm: 7 |

Under the Court's July 24, 2009 scheduling order, Plaintiffs Cunzhu Zheng, Tao Jun, Lui Guokai and the China Democracy Party ("CDP") hereby file their opposition to Defendants Yahoo!, Inc and Yahoo! HK (collectively the "Yahoo! Defendants) motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

# Table of Contents

I.      Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Standards on a motion to dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     This Court should either deny the Yahoo! Defendants' motions to
        dismiss, or grant Plaintiffs leave to amend.. . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      Cunzhu Zheng's allegations reasonably imply that Yahoo! provided
                his confidential internet user information to the PRC . . . . . . . . . . . 7.

                1.      Zheng does not lack Article III standing... . . . . . . . . . . . . . . 9

                2.      Zheng states a claim under the ECPA... . . . . . . . . . . . . . . . 10

                        a.      The fair inference from the allegations in the TAC is
                                that Yahoo! disclosed Zheng's confidential internet
                                user information to the PRC.. . . . . . . . . . . . . . . . . . . 10

                        b.      The ECPA applies outside of the U.S... . . . . . . . . . . . 10

                3.      This Court should not dismiss Plaintiffs' UCL claims... . . . . 12

                        a.      Zheng has standing under the UCL... . . . . . . . . . . . . . 12

                        b.      Zheng alleges that the Yahoo! Defendants engaged
                                in unlawful practices.. . . . . . . . . . . . . . . . . . . . . . . . . 13

                        c.      Because of the Supremacy Clause, the Yahoo!
                                Defendants' disclosures are not privileged... . . . . . . . . 14

        B.      The California China Democratic Party's claims should
                not be dismissed... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.      Lui Guokai's claims should not be dismissed... . . . . . . . . . . . . . . 15

        D.      Tao Jun's claims should not be dismissed... . . . . . . . . . . . . . . . . . 16

V.      Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

**Table of Authorities**

**Cases:**

*American Pipe & Constr. Co. v. Utah*,

    414 U.S. 538 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Arpin v. Santa Clara Transp. Agency*,

    261 F.3d 912 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ashcroft v. Iqbal*,

    129 S.Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

*Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*,

    20 Cal. 4th 163 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Conley v. Gibson*,

    355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Crown, Cork & Seal v. Parker*,

    462 U.S. 354 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doe v. United States Dept. of Justice*,

    753 F.2d 1092  (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*G & C Auto Body, Inc. v. Geico General Ins. Co.*,

    2007 WL 4350907 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gilligan v. Jamco Dev. Corp.*,

    108 F.3d 246 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hagberg v. Cal. Federal Bank FSB*,

    32 Cal. 4th 350 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hatfield v. Halifax PLC*,

    564 F.3d 1177 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hunt v. Washington State Apple Advertising Comm'n*,

    432 U.S. 333 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Independent Living Center of Southern Calif., Inc. v. Shewry*,

    543 F.3d 1050 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Infonet Servs. Corp. Secs. Litig.*,

    310 F. Supp. 2d 1106 (C.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Pomona Medical Group*,

    476 F.3d 665 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Massey v. Banning Unified School Dist.*,

    256 F.Supp.2d 1090 (C.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*MGIC Indem. Corp. v. Weisman*,

    803 F.2d 500 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Neitzke v. Williams*,

    490 U.S. 319 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Northeastern Florida Chapter of Associated General Contractors v. City of*

*Jacksonville*, 508 U.S. 656 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pareto v. Federal Depository Ins. Corp.*,

    139 F.3d 696 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Saunders v. Superior Court*,

    27 Cal. App. 4th (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sanjuan v. American Bd. of Psychology and Neurology, Inc.*,

    40 F.3d 247 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Baker*,

    609 F.2d 134 (5th Cir.1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iii

*United States v. Cathcart*,

 2008 WL 4279717 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Medjuck*,

 48 F.3d 1107 (9th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Perlaza*,

 439 U.S. F.3d 1149 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Peterson*,

 812 F.2d 486 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*United States v. Pizzarusso*,

 388 F.2d 8 (2d Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Redwood City*,

 640 F.2d 963 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Toscanino*,

 500 F.2d 267 (2d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Visionquest CHC, LLC v. Buchholz*,

 2009 WL 2031794 (N.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Walker v. USAA Cas. Ins. Co.*,

 474 F. Supp. 2d 1168 (E.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Warth v. Seldin*,

 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Statutes , Rules and Constitutions:**

Alien Tort Claims Act, 28 U.S.C. § 1350. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Bus. & Prof. Code § 17200.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13-14

 Cal. Civ. Code § 47(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Electronic Communications Privacy Act, 18 U.S.C. § 2520.. . . . 5, 10-11, 14, 17

 Fed. R. Civ. P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iv

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

Torture Victims Protection Act, 28 U.S.C. § 1350. . . . . . . . . . . . . . . . . . . . . 5

U.S. Const., Art. III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Miscellaneous:**

Transcript of Hearing on Yahoo! Inc.'s Provision of False Information to
Congress, Committee on Foreign Affairs House of Representatives, Nov. 6,
2007 Serial No. 110-129. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

1968 U.S. Code Cong. & Admin. News, 90th Cong., 2d Sess.. . . . . . . . . . . . . 11

v

# I.    Issues.

This motion raises the following issues:

**Yahoo! liability.**  U.S. law provides a remedy to violations of privacy of persons whose Internet information is misused.  The Complaint implies that Yahoo! provided Zheng's confidential Internet information to the PRC in violation of his rights.  A victim has Article III standing when he has been harmed.  Zheng was harmed when his privacy was violated.  The Complaint alleges that Yahoo!'s email transmissions route through the U.S.  Should this Court rule that Plaintiffs have stated a claim based on Yahoo! turning over their confidential information to the PRC?

**B&P 17200.**  California's Unfair Competition Law, B&P 17200 *et seq*. (UCL) forbids unfair, unlawful, or fraudulent business acts and practices, and provides for restitution and injunctive relief.  Violation of a federal statute violates Section 17200.  The Electronic Communications Privacy Act (ECPA) is a federal statute.  Can Plaintiffs recover injunctive or restitutionary relief under the UCL, Section 17200?

**CDC standing and statute of limitations**.  Associations have Article III standing to assert claims for their members.  The China Democracy Party (CDP) is here asserting claims for its members.  The filing of a class action tolls statutes of limitations as to all putative class members.  Plaintiff Lui Guokai was a member of the putative class in the *Xiaoning* class action.  Should this Court dismiss the claims of CDC for lack of standing, or the claims of Guokai on statute-of-limitations grounds?

## II.   Background.

Contrary to the Yahoo! Defendants' assertion, the facts of this case are relatively simple.

The arrest and prosecution of Chinese dissidents such as Wang Xiaoning and Li Zhi have alerted the free world (and Plaintiffs) that Internet Service Providers such as Yahoo! had been providing private internet user information (specifically the contents of email transmissions and the identity of the senders of such transmissions) to the PRC, which has been using the information as the basis to arrest, prosecute, imprison, and torture those dissidents for advocating democratic reforms in China and alerting the world to the PRC's abuses of human and civil rights (most notably, the 1989 Tiananmen Square massacre).

Li Zhi was a dissident and member of the China Democracy Party ("CDP") who was arrested and imprisoned in 2003 for circulating email transmissions concerning the advocacy of democratic reform in the PRC.  At Li's trial, the PRC introduced evidence concerning his email transmissions that was provided to it by Yahoo!.  TAC at ¶¶ 32-34.

Plaintiff Cunzhu Zheng is a survivor of the Tiananmen Square massacre and a member of the CDP who has a Yahoo! email account and engaged in dissident activities in the PRC including publishing articles on democracy in China on the Internet.  TAC at ¶ 36.

It became clear to Zheng while in the U.S. that because Li held the exact same position in the CDP as he did, and engaged in the same activities, Zheng could not safely return to the PRC and he now lives in exile in the U.S.  Because of his exile, Zheng lost control of his factories and investments in China.  TAC at ¶¶ 37-39.  Zheng concedes that he does not know for certain whether Yahoo! provided his user information to the PRC, but is informed and believes that it did

1    so.

2           Plaintiff Liu Guokai is a citizen of the PRC living in exile in New York.

3    Mr. Guokai is the leader of the overseas China Social Democratic Party, which is

4    considered to be a "hostile organization" by PRC officials.  When Yahoo!

5    disclosed Wang Xiaoning's private communications to PRC (the subject matter of

6    the now-settled *Xiaoning, et al., v. Yahoo, Inc., et al.*, No. CV-07-02151 CW/JCS

7    (N.D. Cal.) case), it also, indirectly disclosed Mr. Guokai's confidential

8    communications because it was Mr. Guokai who was communicating with Mr.

9    Xiaoning.  The Chinese courts used those e-mail communications between Mr.

10   Xiaoning and Mr. Guokai as the basis for its prosecution of Mr. Xiaoning for

11   which he was sentenced to 10 years in prison, and two years subsequent

12   deprivation of political rights on the charge of incitement to subvert state power.

13   TAC at ¶ 4.

14          Plaintiff Tao Jun is a citizen of the PRC and an asylum applicant in

15   California.  Mr. Jun suffered the nightmare of being incarcerated in a Chinese jail

16   for three years.  His wife was forced by the police to divorce him and removed his

17   son to the Sichuan Province.  Because of the earthquake in the Sichuan Province

18   in May, 2008, Mr. Jun has lost contact with his son.  During Mr. Jun's

19   arraignment, the public security officials used messages from his Yahoo! account

20   to prove his anti-state activities.  At the time of his trial, Mr. Jun could not

21   understand how public-security officials obtained the e-mails from Mr. Jun's

22   Yahoo! account.  But because of the news coverage of Mr. Xiaoning's case, Mr.

23   Jun deduced that Yahoo! had been providing confidential communications to the

24   PRC not only with respect to his case, but as to other political dissents as well.

25   TAC at ¶ 6.

26          In February 2006, the Committee on Foreign Affairs of the U.S. House of

27

28                                              3

Representatives convened a hearing on "The Internet in China, A Tool for Freedom or Suppression." Executives at Yahoo! were summoned to specifically address the case of Shi Tao, another dissident who was imprisoned in the PRC based in information provided by Yahoo! to the PRC. At the hearing, Michael Callahan, Yahoo!'s General Counsel testified under oath that:

> When Yahoo! China in Beijing was prepared to provide information about the user who we later learned was Shi Tao, we had no information about the nature of the investigation. Indeed, we were unaware of the particular facts surrounding the case until the news story emerged.

Transcript of Hearing on Yahoo! Inc.'s Provision of False Information to Congress, Committee on Foreign Affairs House of Representatives, Nov. 6, 2007 Serial No. 11 Transcript of Hearing on Yahoo! Inc.'s Provision of False Information to Congress, Committee on Foreign Affairs House of Representatives, Nov. 6, 2007 Serial No. 110-129 ("House Testimony") at 24.

But the Committee later learned that this testimony was, at a minimum, incorrect. On November 6, 2007, the Committee called Yahoo! executives back for a hearing on "Yahoo!, Inc.'s Provision of False Information to Congress." Mr. Callahan and Yahoo! CEO Jerry Yang testified at this hearing.

Chairman Lantos stated:

> Based upon a thorough investigation by the staff of this committee, we now know that while Mr. Callahan may not have known the relevant facts personally, other Yahoo! employees, in fact, did know the nature of the Chinese investigation against Shi Tao prior to our committee hearing.

> Specifically, the document to Yahoo! China on April 24, 2004 by the Beijing State Security Bureau stated, and I quote:

>> "Your office is in possession of the following items relating to a case of suspected illegal provision of state secrets to foreign entities and so on."

> The term "state secrets" is commonly used in China when a phony criminal case is concocted against political activists. A

4

> reasonable person who receives such an order would immediately note that the case in question involves either a political or religious dissident.
>
> Even an unsophisticated person operating in the context of the Chinese police state would know full well that "state secrets" is a trick phrase used to fabricate a phony but devastating legal case against an innocent person who shares our values in an open and free society.

House Testimony at 2.

While Mr. Callahan conceded that the information he earlier provided to the Committee was incorrect, neither he, nor anyone else at Yahoo!, did anything to correct or supplement his earlier testimony.

On February 22, 2008, Plaintiffs in pro per filed the instant action which was fashioned in large part, but by no means exclusively, on the complaint in the *Xioaning* case. Plaintiffs later obtained counsel and amended their complaint making major changes, including omitting state-tort-law claims and adding the PRC as a defendant. After conversations with Yahoo!'s counsel, Plaintiffs again amended their Complaint to eliminate some objections to the Complaint posed by Yahoo!. The Complaint was later amended a third time to specifically allege dollar amounts against the PRC, in case it eventually defaults.

The TAC alleges a claim against the Yahoo! Defendants under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2520 and under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. It also alleges a claim against the PRC under the Torture Victims Protection Act ("TVPA"), the Alien Tort Claims Act ("ATCA") or ("ATA"), 28 U.S.C. § 1350, and international-treaty claims, and under the California UCL.

**III.   Standards on a motion to dismiss.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" that

gives "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Since *Conley*, the federal courts have observed the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Id*. at 45-46 (emphasis added). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court "retired" *Conley*'s "no set of facts language." In *Twombly*, the Court held that the pleading standard announced in Rule 8 does "not require 'detailed factual allegations,' but demands more than unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570).

The new rule articulated by *Twombly* is: "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is *plausible on its face*." *Id.* (quoting *Twombly*, 550 U.S at 570) (emphasis added). Or, put differently, "[o]nce a claim had been stated adequately, it may be supported by any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. American Bd. of Psychology and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (Once a claim for relief has been stated, a plaintiff "receives the benefit of the imagination, so long as the hypothesis are consistent with the complaint.")).

Many courts view Rule 12(b) motions with disfavor because of the lesser role pleadings play in federal practice and the liberal policy re amendment. "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A Rule 12 motion is proper only in "extraordinary cases." *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

In reviewing a 12(b)(6) motion, the Court must accept as true, all material allegations in the Complaint, as well as reasonable inferences to be drawn from them. *Pareto v. Federal Depository Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998) "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief or a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

Further, unless the Court converts the Rule 12(b) motion into a motion for summary judgment, or the defense is apparent from matters of which the Court may take judicial notice, the Court cannot consider materials outside the complaint. *Arpin v. Santa Clara Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2000).

## IV. This Court should either deny the Yahoo! Defendants' motions to dismiss, or grant Plaintiffs leave to amend.

### A. Cunzhu Zheng's allegations reasonably imply that Yahoo! provided his confidential internet user information to the PRC .

Reading the Yahoo! Defendants' motion, it appears that they'd be content with this Court ruling right here and now that Zheng's claims should be dismissed because he doesn't presently have direct evidence that Yahoo! disclosed his confidential internet-user information to the PRC. But they don't outright deny that they did it either.

As stated above, this Court must accept as true all "reasonable inferences to be drawn" from the allegations in the complaint. *Pareto*, 139 F.3d at 699. The Supreme Court has held that allegations in a complaint are "plausible" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Neither is the TAC one with merely "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949

1   (quoting *Twombly*, 550 U.S. at 557).

2       The Yahoo! Defendants claim that in the TAC Zheng himself does not come

3   right out and state that Yahoo! provided his private user-internet information to

4   PRC officials. But to the extent this is true, this is curable. In the TAC, Plaintiffs

5   nonetheless allege, "Defendants Yahoo!, Inc. and Yahoo! HK intentionally

6   disclosed Plaintiffs' private communications to Defendant PRC." TAC at ¶ 46.

7   Taking all of Zheng's allegations as true, it is clearly "plausible" that Yahoo! is

8   liable for the misconduct that Zheng alleges. Zheng had a Yahoo! email account

9   that he used in China. He used that account to engage in dissident activities, and

10  became a member of the CDP. TAC at ¶ 36. Zheng was in the U.S. when he

11  learned of the arrest on prosecution of Li Zhi, who was in the exact same position

12  as Zheng, with respect to both's leadership position in the China Democratic

13  Party, and Yahoo!'s connection to Li's arrest and prosecution. TAC at ¶¶ 36, 38.

14      Given that Yahoo! provided confidential user-internet information that led

15  to the arrest and imprisonment of Xioaning, Li, and Shi Tao, and that Zheng

16  engaged in similar (or the same) dissident activities, and that he also had a Yahoo!

17  email account, it is hardly a stretch to imagine, meaning it is a "reasonable

18  inference" (and it is certainly "plausible") that Yahoo! did the same to Zheng, and

19  numerous other dissidents.

20      Because Zheng's allegations lead to the inference that Yahoo! disclosed his

21  confidential internet-user information, the Court should deny the Yahoo!

22  Defendants' motion to dismiss the action as to Zheng. If this Court finds Zheng's

23  allegations insufficient, he requests leave of court to amend the Complaint to

24  allege that he is informed and believes that the Yahoo! Defendants disclosed his

25  confidential internet-user information to PRC officials. *Visionquest CHC, LLC v.*

26  *Buchholz*, 2009 WL 2031794 at 8 (N.D. Cal. 2009) (leave to make information-

27

28                                          8

1   and-belief pleading with factual basis); *United States v. Cathcart*, 2008 WL

2   4279717 at 3 (N.D. Cal. 2008) (same).

3            **1.     Zheng does not lack Article III standing.**

4        "It has been established by a long line of cases that a party seeking to

5   invoke a federal court's jurisdiction must demonstrate three things: (1) 'injury in

6   fact,' by which we mean an invasion of a legally protected interest that is '(a)

7   concrete and particularized, and (b) actual or imminent, not conjectural or

8   hypothetical'; (2) a causal relationship between the injury and the challenged

9   conduct, by which we mean that the injury 'can fairly be traced to the challenged

10  conduct of the defendant, and not resulted from the independent action of some

11  third party not before the court,' and (3) a likelihood that the injury will be

12  redressed by a favorable rule that is not 'too speculative." *Northeastern Florida*

13  *Chapter of Associated General Contractors v. City of Jacksonville*, 508 U.S. 656,

14  663 (1993) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

15       The Yahoo! Defendants have it wrong when they say that Zheng must trace

16  the injury from Yahoo! to the actors in the PRC.  Yahoo! Memorandum at 6.  Here

17  the injury to Zheng is not the actions the PRC may or may not have taken against

18  him, but *Yahoo!'s disclosures of Zheng's confidential internet user information* to

19  the PRC.  It is the right to expect that internet-user information will remain

20  confidential — that is the interest protected by the ECPA, 18 U.S.C. § 2520(a).  It

21  is Zheng's right to privacy that had been violated by Yahoo!, not some inchoate

22  right to return to China (although that is an element of his damages).

23       All the elements of Article III standing have been met here.  If true, there is

24  nothing "hypothetical" or "conjectural" about Zheng's injuries.  The "legally

25  protected interest" is the right to be free from unwanted disclosures of confidential

26  internet user information.  The injury (a violation of Zheng's right to privacy) is

27

28                                              9

1  fairly traceable to Yahoo!.  Further, damages and/or an injunction would redress

2  Zheng's injuries.

3  **2.     Zheng states a claim under the ECPA.**

4  **a.     The fair inference from the allegations in the TAC is
          that Yahoo! disclosed Zheng's confidential internet
5          user information to the PRC.**

6  Title 18 U.S.C. section 2520(a) provides in relevant part: "any person whose

7  wire, oral, or electronic communications is intercepted, disclosed, or intentionally

8  used in violation of this chapter may in a civil action recover from the person or

9  entity . . . which engaged in that violation."

10  Again, the TAC, fairly read, leads to the inference that Yahoo! disclosed

11  Zheng's confidential internet-user information to the PRC.  If this Court finds

12  Zheng's allegations insufficient, he requests leave of Court to amend the

13  Complaint to allege that he is informed and believes that the Yahoo! Defendants

14  disclosed his confidential internet-user information to PRC officials.

15  **b.     The ECPA applies outside of the U.S.**

16  Yahoo!'s citations of *United States v. Peterson*, 812 F.2d 486, 492 (9th Cir.

17  1987), and *United States v. Toscanino*, 500 F.2d 267, 279 (2d Cir. 1974), are slim

18  reeds upon which to base its arguments that the ECPA does not apply in this case.

19  *Peterson* was a case where wiretap evidence was allowed in court even if its

20  collection may have violated the ECPA.  In *Toscanino*, the court rejected a request

21  that the government deny or confirm illegal activity in the form of eavesdropping

22  or surveillance.

23  This is not a case of U.S. Government eavesdropping.  In *Toscanino* the

24  court stated:

25  The term "wire communication," as used in the statute, 18 U.S.C. §
     2520(1) is intended to refer to *communications "through our*
26  *Nation's communication network. . . .*"

27

28  10

1   *Toscanino*, 500 F.2d at 279 (citing 1968 U.S. Code Cong. & Admin. News, 90th

2   Cong., 2d Sess. p. 2178) (emphasis added)).

3        Yahoo! has email servers around the globe.  Any given communication may

4   travel through U.S. networks.  That is, if a Yahoo! user in Guanzhou sends an

5   email to a Yahoo! user in Bejing, the e-mail may actually travel through "our

6   nation's communication network."  In the TAC Plaintiffs allege:

7        Defendants Yahoo!, Inc. and Yahoo! HK intentionally acquired the
         communications that had been sent from, or directed to, Plaintiffs
8        through their use of computers and other electronic devices which
         were part of, and utilized in, the Yahoo! Defendants' electronic
9        communications system which exists, in part in the United States. . . .

10  TAC at ¶ 50.  Under these circumstances, the ECPA would clearly apply.

11       Further, the Ninth Circuit has extended the extraterritorially of other laws

12  for policy reasons present here.  In *Peterson* the court stated:

13       We also reject appellants' argument that section 955a, so construed, is
         an improper and unconstitutional exercise of extraterritorial
14       jurisdiction.  We conclude that there was more than a sufficient nexus
         with the United States to allow the exercise of jurisdiction. There was
15       substantial evidence that the drugs were bound ultimately for the
         United States.  Where an attempted transaction is aimed at causing
16       criminal acts within the United States, there is a sufficient basis for
         the United States to exercise its jurisdiction to arrest and try the
17       offenders.  See, e.g., *United States v. Baker*, 609 F.2d 134 (5th
         Cir.1980).  Further, drug trafficking may be prevented under the
18       *protective principle of jurisdiction*, without any showing of an actual
         effect on the United States. *United States v. Pizzarusso*, 388 F.2d 8,
19       10-11 (2d Cir.), *cert. denied*, 392 U.S. 936 (1968).  *Protective*
         *jurisdiction is proper if the activity threatens the security or*
20       *governmental functions of the United States*.  Restatement Second of
         Foreign Relations § 33.  Drug trafficking presents the sort of threat to
21       our nation's ability to function that merits application of the
         protective principle of jurisdiction.

22

23  *Peterson*, 812 F.2d at 493-94 (emphasis added).

24       In *United States v. Perlaza*, 439 U.S. F.3d 1149, 1160 (9th Cir. 2006), the

25  court stated:

26       In addition to the MDLEA's "statutory jurisdiction" requirements,
         where the MDLEA is being applied extraterritorially, as in this case,
27

28                                    11

due process requires the Government to demonstrate that there exists "a sufficient nexus between the conduct condemned and the United States" such that the application of the statute would not be arbitrary or fundamentally unfair to the defendant. *United States v. Medjuck* (" *Medjuck II* "), 48 F.3d 1107, 1111 (9th Cir.1995).

The connection between democratic reform in China and the national security interest of the United States cannot be understated. At the Hearing on Yahoo! Inc.'s Provision of False Information to Congress, Congresswoman Ileana Ros-Lehtinen of Florida stated:

> The power represented by the often quoted words that "the truth shall set you free" was dramatically demonstrated by the collapse of the Soviet Empire when the grip of the regimes on their societies' connections to the outside world was finally pried loose.
>
> The United States was an indispensable element in that liberation, patiently working through the decades to ensure that light continued to pierce those walls.

House Testimony at 6.

This Court should apply the  protective principle of jurisdiction here.  That threatening the advocating of democracy, free elections, and the rule of law in China ultimately "threatens the security or governmental functions of the United States" no less than shipping illegal drugs into the country.

### 3.    This Court should not dismiss Plaintiffs' UCL claims.

### a.    Zheng has standing under the UCL.

Plaintiffs concede that they cannot recover damages against the Yahoo Defendants under the California Unfair Competition Law ("UCL").  But Plaintiffs' prayer for relief under the UCL claim does not seek any monetary relief from the Yahoo! Defendants.

Contrary to the Yahoo! Defendants' assertions, Plaintiffs may obtain injunctive relief for violations of the UCL.  Cal. Bus. & Prof. Code §17203. *G & C Auto Body, Inc. v. Geico General Ins. Co.*, 2007 WL 4350907 (N.D. Cal. 2007) (rejecting *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal.

12

2007)).  Further, Plaintiffs may nonetheless obtain restitution from the PRC.  TAC at ¶ 39 ("Zheng['s] exile from home, caused by his fear of being arrested by security police in the PRC caused him to lose control of his factories and investments.").

It should be remembered that a Rule 12(b)(6) motion should not be granted merely because plaintiff requests a remedy to which it is not entitled.  "[I]t need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted." *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985); *Massey v. Banning Unified School Dist.*, 256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003).

### b.   Zheng alleges that the Yahoo! Defendants engaged in unlawful practices.

The Yahoo! Defendants are also incorrect where they state that "Zheng also fails to allege facts demonstrating that Yahoo! or Yahoo! HK engaged in unlawful, unfair, or fraudulent business practices."  Yahoo! Memorandum at 10.

"California's UCL prohibits 'unfair competition,' which it defines in relevant part to 'mean and include any unlawful, unfair, or fraudulent business act or practice."  *Walker*, 474 F. Supp. 2d at 1171 (quoting Cal. Bus. & Prof. Code § 17200).  "An 'unlawful' business practice under the UCL is a practice that violates any other law."  *Id.* (citing *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

Here, Plaintiffs allege that the Yahoo! Defendants "intentionally disclosed Plaintiffs' private communications to Defendant PRC in violation of the Electronic Communications Privacy Act."  TAC at ¶ 45.

13

### c.   Because of the Supremacy Clause, the Yahoo! Defendants' disclosures are not privileged.

Civil Code section 47(b) is California's litigation privilege which provides that "[a] privileged publication or broadcast is one made . . . in any judicial proceeding. *Hagberg v. Cal. Federal Bank FSB*, 32 Cal. 4th 350, 360 (2004).  But because of the Supremacy Clause, California's litigation privilege cannot be used as a defense to activity made unlawful by a federal statute, here, disclosures under the ECPA.  *Independent Living Center of Southern Calif., Inc. v. Shewry*, 543 F.3d 1050, 1052 n.2 (9th Cir. 2008) (Under Supremacy Clause, the "Constitution and laws of the United States . . . shall be the supreme law of the land.").

A practice is unlawful under the UCL if it violates either state or federal law.  *In re Pomona Medical Group*, 476 F.3d 665, 674 (9th Cir. 2007) ("An unlawful act is one 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.'" (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832 (1994)).

As ECPA is a *federal* law, the Yahoo! Defendants cannot successfully argue that it cannot be a predicate offense for UCL liability because of California's litigation privilege, which cannot apply as a defense to an ECPA claim.  In any even, the ECPA was still violated, rendering the Yahoo! Defendants' actions still "unlawful" under federal law, and hence, a predicate violation of the UCL. Accordingly, the Court should not dismiss Plaintiffs' UCL claim.

### B.   The California China Democracy Party's claims should not be dismissed.

It is clear that "an association may have standing to assert the claims of its members, even where it has suffered no injury from the challenged activity." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977) (citing

14

1    *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).

2        As Zheng and Jun are both members of the China Democracy Party, both in

3    the PRC and in California (See TAC at ¶ 3 "Zheng is a member of the China

4    Democracy Party") (as is Jun), it has standing to pursue its claims under Article

5    III.  If needed, Jun can amend the Complaint to allege his membership in the Party.

6

7        **C.    Lui Guokai's claims should not be dismissed.**

8        With respect to the Yahoo! Defendants' arguments concerning the

9    extraterritoriality of the ECPA, Guokai relies on the identical argument stated at

10   section V.A.2.a. above.

11       The Yahoo! Defendants are correct that when considering whether to

12   dismiss a claim on statute-of-limitations-grounds, such dismissal is only

13   appropriate where the grounds for dismissal lies on the face of the complaint, or

14   judicially noticeable facts show the claim is time-barred.  Yahoo! Memorandum at

15   15 (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *In*

16   *re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d 1106, 1116 (C.D. Cal.

17   2003)).[1]

18       Further, *Xiaoning* was initially filed as a class action, and Lui Guokai would

19   have been a member of that putative class.  In *American Pipe & Constr. Co. v.*

20   *Utah*, 414 U.S. 538 (1974), the Supreme Court expressly addressed the issue of

21   whether the filing of a class action acts to toll the statutes of limitations for

22   unnamed class members.  In *American Pipe,* putative class members moved to

23   intervene in the named plaintiffs' individual action after the district court ruled

24

25       ───────────────

26       [1]  Because Exhibit 1 to the Yahoo! Defendants' request for judicial notice is
     a news article, it is not the proper subject of judicial notice and Plaintiffs object to

27   the Court's taking judicial notice of it.

28                                    15

that a federal antitrust suit could not proceed as a class action. *See id.* at 543-44. The district court denied the motion to intervene, concluding that the claims of these putative class members were barred by the applicable statute of limitations. *Id.* at 544. The Supreme Court ultimately reversed this finding, concluding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. The Supreme Court held that the intervenors' individual claims were not time barred since the statute of limitations had been tolled by the filing of the class action, and since they made timely motions to intervene to pursue individual claims after the denial of class certification. *Id.*

Later, in *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345 (1983), the Supreme Court held that the *American Pipe* tolling principle applied to members of the putative class who chose to bring a separate *individual* action after the denial of class certification. *Id.* at 353-54.

Further, the principles of equitable tolling apply to putative class members of the *Xioaning* litigation, including Guokai. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1188 (9th Cir. 2009) ("Although the two types of tolling — equitable and American Pipe — overlap, to some extent . . . and even though California courts have treated them at times as interchangeable, they are not congruent.").

Because Guokai was a putative member of the uncertified class in *Xioaning*, the statute of limitations on his claims was tolled. Accordingly, the Court should not dismiss his claims on limitations grounds.

**D.     Tao Jun's claims should not be dismissed.**

For the same reason that Zheng has article III standing, so does Jun. The Yahoo! Defendants make a diversion from the real issue when they say that Jun

must trace the injury from Yahoo! to the actors in the PRC.  Yahoo! Memorandum at 18.  But here, the injury to Jun (as far as the Yahoo! Defendants are concerned) is not the actions of the PRC in arresting, imprisoning and subjecting him to torture, cruel, inhuman and degrading treatment, but *Yahoo!'s disclosures of Jun's confidential internet-user information* to the PRC.  It is the right to expect that internet-user information will remain confidential that is the interest protected by the ECPA, 18 U.S.C. § 2520(a).  It is Jun's right to privacy that had been violated by Yahoo!, not the fact that he was imprisoned (although that is an element of his damages).

Finally, for the same reason that Zheng has properly asserted claims under the UCL (as set forth in section V.A.3 above), so has Jun.  Accordingly, his UCL claim should not be dismissed.

**VII    Conclusion.**

Because it is a plausible and a reasonable inference from the TAC that the Yahoo! Defendants provided Plaintiffs' confidential internet-user information to the PRC, Plaintiffs have stated a claim for relief under the ECPA and sufficient under Article III.

Further, given that Yahoo! email transmissions route through servers in the U.S. and supporting democratic reform in the PRC is in the national-security interests of the U.S., the ECPA applies outside the borders of the U.S.

Also, violating the Electronic Communications Privacy Act is unlawful activity for liability under the UCL and Plaintiffs may sue for injunctive relief under the UCL.

Finally, being a member of the putative class in  *Xiaoning, et al., v. Yahoo, Inc., et al.*, case tolls the statute of limitations as it applies to Plaintiff Lui Guokai.

1    For the foregoing reasons, this Court should deny the Yahoo! Defendants'
2    motion to dismiss in its entirety.  Should this Court nonetheless agree that
3    dismissal (in whole or in part ) is appropriate, it should give Plaintiffs leave to
4    amend.

5

6    DATED: October 19, 2009        LAW OFFICE OF THOMAS K. BOURKE

7

8

9    By_____
                            Thomas K. Bourke
10                       Attorney for Plaintiffs Cunzhu Zheng, *et al.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    18