IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUNZHU ZHENG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>YAHOO! INC. et al.,<br><br>    Defendants | No. C-08-1068 MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER RULE 12(B)(6); VACATING HEARING** |

Before the Court is defendants Yahoo!, Inc. ("Yahoo!") and Yahoo! Hong Kong, Ltd.'s ("Yahoo! HK") (collectively, "Yahoo! Defendants") "Motion to Dismiss Plaintiffs' Third Amended Complaint Under Rule 12(b)(6)," filed August 7, 2009.[1] Plaintiffs Cunzhu Zhen, Liu Guokai, Tao Jun, and the China Democracy Party have filed opposition, to which the Yahoo! Defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court finds the matter suitable for decision on the parties' respective submissions, VACATES the hearing scheduled for December 4, 2009, and rules as follows.

**BACKGROUND**

In the Third Amended Complaint ("TAC"), plaintiffs allege that Yahoo! China disclosed to the Peoples Republic of China ("PRC") "specific personal information" about

---

[1] A third defendant, the Peoples Republic of China, has not appeared.

plaintiffs, in particular, "Internet user information" and "specific identifying information about the [p]laintiffs and their electronic communications" (see TAC ¶¶ 14, 27), and that, as a result of the disclosures, plaintiffs were subjected by the PRC to "serious injuries, including torture, detention, imprisonment, degrading and/or humiliating treatment and emotional distress" (see TAC ¶¶ 22, 52 ) and, additionally, incurred "serious economic damages" (see TAC ¶ 52).[2] According to plaintiffs, Yahoo! HK was, at the time of the alleged disclosures, the "parent company" of Yahoo! China and was "responsible for operating and managing Yahoo! China" (see TAC ¶¶ 11, 15), while Yahoo!, as the "parent company" of Yahoo! HK, "exercised functional control and supervision over important aspects of Yahoo! China," including "supervision and control of policy and legal decisions made by Yahoo! China's legal team," such as "review[ing] and approv[ing]" Yahoo! China's "decision to disclose Internet user information" to the PRC (see TAC ¶¶ 11, 14).

Based on the above allegations, plaintiffs allege that the Yahoo! Defendants violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2517-2712, and, based on such "unlawful act," violated § 17200 of the California Business & Professions Code as well.[3]

**DISCUSSION**

"In 1986, Congress passed the [ECPA], which was intended to afford privacy protection to electronic communications." Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 874 (9th Cir. 2002) (internal citation omitted). "Title I of the ECPA amended the federal Wiretap Act, which previously addressed only wire and oral communications, to address

---

[2] Plaintiffs allege that each individual plaintiff is a citizen of the PRC who presently lives in exile in the United States. (See TAC ¶¶ 3, 4, 6.)

[3] As pleaded, plaintiffs' § 17200 claim could be interpreted as alleging that the Yahoo! Defendants engaged in additional unlawful acts, specifically, by violating the Alien Tort Statute, the Torture Victims Protection Act of 1991, and/or the United Nations Convention Against Torture. (See TAC ¶ 65.) Subsequent to the filing of the TAC, however, plaintiffs have clarified those specific alleged violations are not "predicate offenses" alleged under § 17200 against the Yahoo! Defendants, but rather, are only alleged against the PRC. (See Pls.' Opp. to Mot. to Dismiss Under FRCP 12(b)(1) and (7), filed October 19, 2009, at 2:21-24.)

2

the interception of electronic communications." Id. (internal citation, quotation, and alteration omitted). "Title II of the ECPA created the Stored Communications Act (SCA), which was designed to address access to stored wire and electronic communications and transactional records." Id. (internal citation, quotation and alteration omitted). In sum, the ECPA, by amending the Wiretap Act, prohibits interception of electronic communications, see 18 U.S.C. § 2511(1), and, by creating the SCA, prohibits, inter alia, unauthorized access to certain electronic communications, see 18 U.S.C. § 2701(a)(1), and, subject to specified exceptions, the divulging of the contents of electronic communications during such time as the communications are electronically stored, see 18 U.S.C. § 2702(a). The ECPA also provides a private cause of action for persons injured by a violation of the ECPA. See 18 U.S.C. §§ 2520, 2707.

Here, as discussed above, plaintiffs assert Yahoo! China's alleged disclosures of plaintiffs' electronic communications and other information to the PRC were in violation of the ECPA, and that the Yahoo! Defendants can be held liable therefor. Specifically, plaintiffs allege violations of §§ 2511, 2701, and 2702. (See TAC ¶¶ 48-50.) The Yahoo! Defendants argue plaintiffs' claims under the ECPA and plaintiffs' derivative claims under § 17200 are subject to dismissal because, defendants argue, the ECPA does not apply outside of the United States.

It is a "longstanding principle of American law that legislation is presumed to apply only within the territorial jurisdiction of the United States unless the contrary affirmative intention of Congress is clearly expressed." See ARC Ecology v. U.S. Dep't of the Air Force, 411 F.3d 1092, 1097, 1103 (9th Cir. 2005) (holding plaintiffs failed to state claim against federal agency for alleged violations of CERLA at military bases in Philippines, where plaintiffs failed to overcome "statutory presumption against extraterritoriality"); cf. Chua Han Mow v. United States, 730 F.2d 1308, 1311 (9th Cir. 1984) (finding "clear" congressional intent to "give extraterritorial effect" to statute prohibiting manufacture of drugs, where statute explicitly provided it was "intended to reach prohibited acts committed outside the territorial jurisdiction of the United States"). "[C]ourts must resolve restrictively

3

1  any doubts concerning the extraterritorial application of a statute." See ARC Ecology, 411
2  F.3d at 1097.
3       Although it does not appear that any court has expressly considered whether the
4  ECPA applies outside the United States, the Ninth Circuit, as the Yahoo! Defendants note,
5  has held that the version of the Wiretap Act in existence prior to its amendment by the
6  ECPA had "no extraterritorial effect." See United States v. Peterson, 812 F.2d 486, 492
7  (9th Cir. 1987) (rejecting argument that wiretapping of telephones in Thailand could violate
8  Wiretap Act; holding Wiretap Act "has no extraterritorial effect"). In so holding, the Ninth
9  Circuit cited two Second Circuit decisions, each of which, in turn, cited the reasoning set
10 forth in United States v. Toscanino, 500 F.2d 267 (2nd Cir. 1974). In finding that the pre-
11 ECPA version of the Wiretap Act had "no application outside of the United States," the
12 Second Circuit, in Toscanino, relied on a statement in the legislative history that "[t]he term
13 'wire communication,' as used in the [Wiretap Act], is intended to refer to communications
14 'through our Nation's communications network,'" see id. at 279 (quoting 1968 U.S.C.C.A.N.
15 2178), and the fact that the Wiretap Act, in "prescribing the procedures to be followed in
16 obtaining a wiretap authorization," made "no provision for obtaining authorization for a
17 wiretap in a foreign country." See id.; see also Stowe v. Devoy, 588 F.2d 336, 341 (2nd
18 Cir. 1978) ("[T]he federal statute governing wiretapping and eavesdropping, 18 U.S.C.
19 § 2510, et seq., has no application outside the United States.").
20      Plaintiffs point to no language in the ECPA itself, nor to any statement in the
21 legislative history of the ECPA, indicating Congress intended that the ECPA, unlike the
22 version of the Wiretap Act then in effect, apply to activities occurring outside the United
23 States. See, e.g., Smith v. United States, 507 U.S. 197, 204 (1993) (holding, where
24 plaintiff alleging claim under Federal Tort Claims Act based on act in Antarctica failed to
25 offer "clear evidence of congressional intent to apply the FTCA to claims arising in
26 Antarctica", plaintiff failed to show FTCA applied to claims arising in Antarctica). Nor is any
27 such intent apparent.
28      First, no language in the ECPA itself suggests an intent that its provisions apply to

4

interceptions and disclosures occurring in other countries. The ECPA did not amend the portion of the Wiretap Act that made no provision for obtaining authorization for wiretaps in a foreign country, nor did the ECPA, in amending the Wiretap Act and creating the SCA, reference in any manner activities occurring outside the United States.

Further, the available legislative history not only fails to include any statement indicating Congress intended the ECPA to apply outside the United States, the legislative history, specifically, Senate Report No. 99-541, clearly expresses Congress's intent that the ECPA not apply to interceptions outside the United States:

> Subparagraph (D) [of the ECPA] specifies that wire, cable or similar connections furnished or operated by any person engaged in providing or operating such facilities for the transmission of "communications affecting interstate or foreign commerce," are within the definition of a "wire communication." This language recognizes that private networks and intra-company communications systems are common today and brings them within the protection of the statute. However, that language is not meant to suggest that the [ECPA] applies to interceptions made outside the territorial United States. Like the Omnibus Crime Control and Safe Streets Act of 1968 which it revises, the [ECPA] regulates only those interceptions conducted within the territorial United States.

See 1986 U.S.S.C.A.N. 3555, 3566.[4]

Notwithstanding the above, plaintiffs argue the Court can extend the application of the ECPA outside the United States for "policy reasons," specifically, for the reason that the "protective principle of jurisdiction" should be applied, under the theory that threats to persons advocating democracy in the PRC constitutes a threat to the United States. (See Pls.' Opp. at 11:11-12:16.) In support of this argument, plaintiffs rely on Peterson, in which the Ninth Circuit, in addition to holding the then-existing version of the Wiretap Act did not apply outside the United States, held that 21 U.S.C. § 955a(c), a statute then in effect that prohibited the manufacture and distribution of controlled substances, applied to "the high seas," i.e., outside the territorial boundaries of the United States, because § 955a(c) "specifically" included a provision applying the statute to the high seas. See Peterson, 812

---

[4] The Senate Report's reference to the "Omnibus Crime Control and Safe Streets Act of 1968" is a reference to the Wiretap Act as it existed before it was amended by the ECPA. See Peterson, 812 F.2d at 492.

5

1 F.2d at 493. The defendant in Peterson then argued that if § 955a(c), as a matter of
2 statutory construction, applied to conduct on the high seas, the statute was "an improper
3 and unconstitutional exercise of extraterritorial jurisdiction." See id. The Ninth Circuit
4 rejected the defendant's argument, finding Congress may prevent "drug trafficking" under
5 the "protective principle of jurisdiction" because drug trafficking "presents the sort of threat
6 to our nation's ability to function that merits application of the protective principle of
7 jurisdiction." See id. at 493-94.

8 Plaintiffs' reliance on Peterson is unavailing. Where Congress makes clear its intent
9 that a statute is to apply outside the United States, extraterritorial application of such
10 statute is, under some circumstances, subject to judicial "restriction[ ]," for the reason that
11 any such "application of the statute to the acts in question [must] not violate the due
12 process clause of the Fifth Amendment." See United States v. Davis, 905 F.2d 245, 248-
13 49 and n.2 (9th Cir. 1990) (citing cases holding "extraterritorial application" of statute was
14 justified by "protective principle"). Here, by contrast, there is no extraterritorial application
15 to either enforce or restrict. As discussed above, Congress has not made clear an intent
16 that the ECPA apply outside the United States, and, indeed, the available legislative history
17 clearly reflects the congressional intent that the ECPA not apply outside the United States.
18 Consequently, no issue regarding whether extraterritorial application would comport with
19 due process is presented by the instant case.

20 Lastly, plaintiffs argue that the Yahoo! Defendants have "email servers around the
21 globe," and that when a Yahoo! user in one city in the PRC sends an electronic
22 communication to a Yahoo! user in another city in the PRC, the communication "may"
23 travel through the Yahoo! Defendants' network, which is located, in part, in the United
24 States. (See Pls.' Opp., filed October 19, 2009, at 11:3-10.) Consistent with this theory,
25 plaintiffs, in the TAC, allege that the Yahoo! Defendants acquired "communications sent
26 and/or received by [p]laintiffs through the use of an electronic device" that is a "part of, and
27 utilized in, the Yahoo! Defendants' electronic communications system, which exists, in part,
28 in the United States." (See TAC ¶ 50.) Plaintiffs further allege, however, that the

6

acquisitions and subsequent disclosures to the PRC were made "locally" by Yahoo! China. (See TAC ¶ 14.) Because the alleged interceptions and disclosures occurred in the PRC, the ECPA does not apply to them, even if the communications, prior to their interception and disclosure, traveled electronically through a network located in the United States. See, e.g., Stowe, 588 F.2d at 341 and n. 12 (holding, where official in Canada intercepted telephone call made from United States to Canada, Wiretap Act did not govern legality of interception "even though the intercepted phone conversations traveled in part over the United States communication system"); United States v. Cotroni, 527 F.2d 708, 711 (2nd Cir. 1975) (holding Wiretap Act inapplicable to communication intercepted in Canada that had "traveled in part" over "United States communication facilities"; citing legislative history indicating "Congress sought by [enacting Wiretap Act] to regulate interceptions, not wire communications").[5]

In sum, plaintiffs' claims that the Yahoo! Defendants violated the ECPA are subject to dismissal with prejudice, for the reason that the ECPA does not apply outside the United States. Further, because plaintiffs' claim that the Yahoo! Defendants violated § 17200 is based on the theory that defendants violated the ECPA, the § 17200 claim likewise is subject to dismissal with prejudice.[6]

Accordingly, the Yahoo! Defendants' motion to dismiss for failure to state a claim will be granted.

//
//
//
//

---

[5] In light of the Court's findings with respect to the applicability of the ECPA outside the United States, the Court does not decide whether plaintiffs' claims against the Yahoo! Defendants are subject to dismissal for the additional reasons set forth in the instant motion.

[6] The § 17200 claim is also alleged against the PRC, and is, to such extent, based on conduct other than alleged violations of the ECPA. Consequently, the instant order is inapplicable to the § 17200 claim against the PRC.

**CONCLUSION**

For the reasons discussed above, the Yahoo! Defendants' motion to dismiss the Third Amended Complaint for failure to state a claim is hereby GRANTED, and plaintiffs' claims against the Yahoo! Defendants are hereby DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: December 2, 2009

MAXINE M. CHESNEY
United States District Judge